## THOMAS J. SHANNON v. MEREDITH M. MARMADUKE.

It is the well settled general rule, that a person cannot act as agent for another (to sell) and become himself the buyer. This principle, like most others, may be subject to some qualification in its application to particular cases.

Although the fact is not proved by positive evidence, that the purchase, in this instance, was made directly or indirectly by the defendant, (the agent,) yet the relationship subsisting between himself and the nominal purchaser, the inadequacy of price, and more especially the reconveyance to the defendant unexplained, afford strong circumstantial evidence tending to that conclusion. Positive evidence of such secret undertakings between parties can rarely be obtained. They are, by such evidence, seldom accessible to the eye of the Court, and hence the attendant circumstances must be looked to, in order to ascertain the real character of the transaction.

Where an agent for the sale of land sold the land for fifty cents per acre, and about two years afterwards the purchaser conveyed to the agent, the principal sued the agent for the land and proved by a witness that he had heard the agent say that he was only authorized to sell when he could get three dollars per acre, it was held, in the absence of any explanation or contradiction of the testimony, the same being corroborated by the other evidence in the case, that plaintiff was entitled to recover.

It is suggested in argument, that the sum for which the land actually sold (at a public sale,) was better evidence of its real value, than the testimony of the witnesses. We think otherwise. The reduced price at which the sale was made is fully accounted for, in the fact that the fairness of the sale was questioned at the time; and that doubtless deterred bidders.

Appeal from Red River. Suit commenced Nov. 1, 1852, by

Marmaduke against Shannon and Becknell. On the 6th day ·of April, 1843, William Becknell being indebted to Meredith M. Marmaduke, of the State of Missouri, in payment thereof, ·at the request of Marmaduke, executed a bond to Thomas J. Shannon for the conveyance of one thousand acres of land in Red River county, part of Becknell's headright, as soon as he ·could receive a patent therefor. Same day said Shannon gave Marmaduke a written promise to pay over to him the proceeds ·arising from the sale or rent of said land, reserving ten per ·cent.; "Marmaduke to pay all expenses connected with said sale, and if said land should be sold on time, the said Marmaduke to pay all expenses of collecting." After alleging the facts already stated, the petition averred that said Shannon was now claiming the land as his own; made Becknell a defendant, and prayed that the bond be cancelled, and that Becknell convey the land to the plaintiff. It appeared that Shannon sold the land in 1847, at public sale, on a public sale day, in the town of Clarksville, after advertisement for six weeks in the Clarksville Standard; that he employed the Sheriff to cry the sale; and the Sheriff testified that he cried the sale fairly, and that there were a good many persons present. James B. Shannon, the brother of the defendant, became the purchaser, at fifty cents per acre. August 6th, 1849, James B. Shannon re-conveyed it to T. J. Shannon, the defendant. William Becknell testified that he was present at the sale in 1847, and that he frequently said during the sale, that it was a fraudulent sale; he also testified that he had heard defendant Shannon say that he was only authorized to sell the land, when it would bring three dollars an acre. It was also proved that the land is now worth four dollars per acre, and had not been worth less than two dollars per acre, since the date of the bond of Becknell. Verdict and judgment for the plaintiff, according to the prayer of the petition. Shannon appealed.

J. T. Mills, for appellant. Whether a conveyance is fraudulent or not, is in most cases a mixed question of law and fact;

but where there is no dispute about the facts, it is a question of law. (7 Cow. 301.) When the facts are undisputed the question of fraud or not is purely a question of law. (9 Port. 39.) The facts in this case surely present no case of fraud, and the jury having so found, the Court should have set aside the verdict. This having been refused in the Court below, the appellant asks it in this Court.

*Morrill & Dickson*, for appellee.

WHEELER, J. It is the well settled general rule, that a person cannot act as agent for another and become himself the buyer. "He cannot be both buyer and seller, at the same time, "or connect his own interest in his dealings as an agent or "trustee for another. It is incompatible with the fiduciary re- "lation. *Emptor emit quam minimo potest, venditor vendit* "*quam maximo potest.* The rule is founded on the danger of "imposition and the presumption of the existence of fraud, in- "accessible to the eye of the Court. The policy of the rule is "to shut the door against temptation, and which, in the cases "in which such a relationship exists, is deemed to be, of itself, "sufficient to create the disqualification. This principle, like "most others, may be subject to some qualification in its appli- "cation to particular cases, but, as a general rule, it appears to "be well settled in the English and in our American Jurispru- "dence." (4 Kent, Com. 438.) It is affirmed by Judge Story, in his treatise on Agency, that this doctrine is recognized in the fullest manner by the Civil Law. And he shows, by ample references, that it is the fully recognized and well established doctrine, not only of the English and American Jurisprudence, but also of the Civil Law. This reason is assigned; that there is a natural incompatibility between the interest of the buyer and that of the seller. (Story on Agency, Sec. 10.) It is a rule, he says, in regard to the duties of agents, which is of general application, that in matters touching the agency, agents cannot act so as to bind their principals, where they have an

adverse interest in themselves. "This rule is founded on the "plain and obvious consideration, that the principal bargains, "in the employment, for the exercise of the disinterested skill, "diligence and zeal of the agent, for his own exclusive benefit." (Id. Sec. 210, *et seq.*)

Although the fact is not proved by positive evidence, that the purchase in this instance was made directly or indirectly by the defendant, yet the relationship subsisting between himself and the nominal purchaser, the inadequacy of price, and more especially the re-conveyance to the defendant, unexplained, afford strong circumstantial evidence tending to that conclusion. Positive evidence of such secret understandings between parties can rarely be obtained. They are, by means of such evidence, seldom "accessible to the eye of the Court," and hence the attendant circumstances must be looked to in order to ascertain the real character of the transaction. But there is another fact disclosed by the evidence, which speaks with a controlling force. That is, the admission of the defendant that he was only authorized to sell the land when it would bring three dollars per acre. The instrument taken by the plaintiff from the defendant, contemporaneously with the making of the title bond by Becknell to the latter, as evidence of the trust, does not contain an express affirmative power to sell, but raises the implication that such authority had been conferred. As the defendant was a trustee clothed with the apparent title, a written power was not necessary to the making of a legal conveyance; but the trustee was bound to observe the parol instructions of the beneficiary. And these were, that he was to sell only when the land would bring three dollars per acre. Under these instructions, as between himself and the beneficiary in the trust, however it might have been if the question of title had arisen between the plaintiff and an innocent third person who had purchased without notice of the trust, or of the instructions under which the trustee acted, the sale was unauthorized, and a fraud upon the rights of the plaintiff. And we think it clear that the defendant, the trustee,

cannot avail himself of his own breach of trust to acquire the trust property, or derive benefits to himself.

Considering the price actually paid for the land, and its value, it is scarcely to be supposed that the defendant could have believed he was acting fairly and honestly towards the plaintiff, to suffer the land to be bid off at a price so grossly inadequate; and the re-conveyance to himself, under the circumstances, affords strong reason to conclude that the purchase was collusively made for his benefit. And if the determination of the question submitted to the jury rested on this evidence alone, we should hesitate much to disturb the verdict. But when taken in connection with the admission of the defendant, respecting the price at which he was authorized to sell, we think it free from doubt that the verdict was fully warranted by the evidence.

It is suggested in argument, that the sum for which the land actually sold was better evidence of its real value than the testimony of the witnesses. We think otherwise. The reduced price at which the sale was made is fully accounted for in the fact that the fairness of the sale was questioned at the time; and that doubtless deterred bidders. The statement of facts, we think, establishes beyond question the land to have been of the value at which it was estimated by the parties and the witnesses. And if it were really of less value, that would not affect the application of the principles on which, it must be held, that the defendant acting as the trustee and agent of the plaintiff, did not acquire a title to the property, as against the latter. The judgment is affirmed.

Judgment affirmed.