## ALLISON v. HARRISON et al.

### No. 10878.

Court of Civil Appeals of Texas. Galveston.

Nov. 16, 1939.

Rehearing Denied Dec. 14, 1939.

Frank L. Morris, Maurice M. Davis, and Phil D. Woodruff, all of Houston, for appellant.

G. P. Hardy, Jr., of Bay City, W. C. Gray, of Palacios, Harris & Harris, of Bay City, and Fahey & Cooper, of Houston (A. Harris, Sr., of Bay City, and Pat N. Fahey, of Houston, of counsel), for appellees.

MONTEITH, Chief Justice.

This is an appeal in an action originally brought by appellant, A. B. Allison and wife, Minnie A. Allison, against G. A. Harrison and P. F. Campbell to establish a constructive trust on 290 acres of land out of the West one-half of Section 10 of the Texas Rice Development Company's Subdivision of the T. J. Dasher and Lewis Goodwin surveys in Matagorda County, Texas, and for an accounting by appellees of monies received by them from the sale of royalties on said land, and in the alternative for damages. Prior to the trial P. F. Campbell died and his wife, Helen A. Campbell, Executrix of his estate, was made a party to the suit. Minnie A. Allison was dismissed from the action before the trial as being neither a necessary nor a proper party.

Appellant alleged that P. F. Campbell had been his agent and representative in connection with the land involved in the suit for many years; that P. F. Campbell and G. A. Harrison had entered into a conspiracy to obtain his land and the minerals thereunder for less than their true and market value and that in furtherance thereof the said Campbell and Harrison had prevailed upon appellant to give P. F. Campbell the exclusive sale of said 290 acres of land from December 18, 1936, to July 1, 1937, for the purpose of selling it to the State of Texas as an air-port. Appellant alleged that upon learning of drilling activities in the vicinity of his land he had written P. F. Campbell requesting that the land be withdrawn from sale, and was informed by Campbell that he had sold said land to G. A. Harrison, and that he was thereby induced to believe that the sale of the land to the State had been consummated by Harrison. In his prayer appellant asked that a constructive trust be established against all of said 290 acres of land and the minerals thereunder remaining in the hands of either Harrison or the executrix of P. F. Campbell's estate; that the legal title thereto be divested out of them and vested in him, and that defendants be required to make an accounting to him for all monies received by them for the sale of royalties. In his alternative plea appellant sought both actual and exemplary damages.

Defendants answered by both general and special demurrers and denials. They specially denied any conspiracy between P. F. Campbell and G. A. Harrison to defraud appellant, or that they had made false representations to him; they specifically alleged that plaintiff knew all of the material facts in connection with such sale and that he had sought advice of counsel before executing the deed to said land and receiving the purchase price therefor. By way of trial amendment they denied that any partnership existed between them.

At the conclusion of appellant's testimony, on motion by defendants, the court instructed the jury to return a verdict against plaintiff and in favor of defendants. Based on such instructed verdict, judgment was rendered in favor of defendants and that plaintiff take nothing by his suit.

The record shows that appellant, a resident of the State of Illinois, had owned the 290 acres of land in question for a number of years, and that during a large part of that time P. F. Campbell had represented him as his agent in connection with said land; that, at the suggestion of P. F. Campbell, that if said property could be purchased for $30 per acre it might be sold to the Government for a municipal air-port, appellant had given P. F. Campbell the exclusive right to sell said property from December 18, 1936, until July 1, 1937, for the price of $8,700 cash, with the provision that one-half of the minerals would be reserved to him. The instrument provided: "If this land is sold to the State of Texas, as is contemplated, party of the second part (P. F. Campbell) shall have it understood that it is for the use as a landing field or air-port, and is subject to an oil lease now on the land and developments for landing field will have to

be made subject to the wishes of the company holding the lease." The record shows that on or about January 23, 1937, it was ascertained by G. A. Harrison that said land could not be sold to the state as an air-port as long as there was an outstanding oil lease on the property. By letter dated February 8, 1937, from P. F. Campbell to appellant, Campbell referring to the efforts being made to sell said land to the State for an air-port said: "We have to give them time and the first chance to take it, but if the well shows us some oil, and if it is not taken by the state shortly we will then try to move it for you to some capitalist or oil man."

By letter to P. F. Campbell dated February 21, 1937, appellant requested that the deal with the State be called off, intimating that, in his opinion, it would be more advantageous to sell the land to private parties. By letters dated February 24, and 25, 1937, P. F. Campbell informed appellant that he had contracted to sell said land to G. A. Harrison, allowing him to take up said option. In the letter of February 25, he stated that it was understood that the land was to be sold to the State for an air-port, if possible, but if not to any one who would buy it if not acted on by the State before some one else did.

In a letter dated February 26, 1937, Ben F. Anderson, appellant's attorney, who resided in Charleston, Illinois, informed P. F. Campbell that A. B. Allison had been in his office discussing negotiations for the sale of said land and had shown him the correspondence between Campbell and Allison, and that Allison had asked him to write Campbell for more full explanation of the matter. The letter stated that it seemed from the correspondence and the option agreement that the land was to be purchased by the State, and that Allison was reserving one-half of the mineral rights if the sale went through; that they knew that there had been considerable excitement in the purchase of oil royalties in the vicinity of the land. He stated that Campbell probably knew, or any competent attorney would tell him, that an option agreement of this kind could not be enforced where the situation had changed so much since the time it was given. He requested a full explanation of the matter and as to who was profiting by the deal, stating that he would then advise Mr. Allison and that they would negotiate further with him.

By letter dated March 3, 1937, P. F. Campbell forwarded to appellant a letter from G. A. Harrison to him (Campbell) dated March 2, 1937, in which Harrison stated that he had offered said property to the state officials as an air-port and that, even though the legislators had not made the money available to him, he was forced to close the option and carry it himself until such time as they saw fit to reimburse him.

Prior to the delivery of said deed, P. F. Campbell received the following letter from Ben F. Anderson: "Your recent letter received. Mr. Allison thought this matter over and he has decided to sell the land regardless of the option, for the price agreed upon of $8700.00. I have prepared deed and sent it with draft attached as per my wire which you have received. As you have the abstracts of title I take it that there is no reason for delaying paying the draft. I am enclosing a copy of the deed so you will have it. Mr. Allison wants this matter promptly paid as he does not want to speculate on it and does not want the purchaser to do so. If the deal is to go through he wants it done at once, if not he wants to know it so he can act accordingly." This letter was dated March 4, 1937.

By deed dated March 6, 1937, A. B. Allison and wife, Minnie A. Allison conveyed to P. F. Campbell the 290 acres of land in question with one-half of the minerals thereunder for a recited consideration of $10 and other valuable considerations. The deed recited that it was subject to a gas, oil and mineral lease. Appellant received therefor the full consideration of $8,700 provided for in said option contract. At the time of the execution of said deed appellant knew that P. F. Campbell had contracted to sell said land to G. A. Harrison under the terms of the option contract of December 18, 1936, and Campbell had informed appellant by letter that it was understood that the land was to be sold to the State for an air-port, but if not, to any one who would buy it if not acted on by the State before some one else did.

By deed dated March 10, 1937, P. F. Campbell conveyed the same property to G. A. Harrison. The instrument recited the same consideration and contained the same recitations with reference to the mineral lease as the deed from Allison and wife to Campbell.

On the trial of the case appellant, on cross-examination, testified that his attorney, Ben F. Anderson, had advised him not to sign said deed, but that he signed it anyway because he thought it would be better to let him have half of the royalty, divide it between them, rather than while they were squabbling over it maybe they would get a dry hole and he would get nothing out of the royalty at all. He stated: "That is the reason I signed it, he was going to hold me off, and maybe I would have lost the whole thing."

The sole question involved in this appeal is whether there is any evidence in the record which, when considered by itself, would, if accepted by the jury as true, raise an issue of fact under which judgment might have been rendered against defendants and in favor of appellant.

Appellant contends that the testimony raises the issues that both P. F. Campbell and G. A. Harrison became fiduciaries of appellant; that, prior to the execution of the option contract from appellant to P. F. Campbell, both Campbell and G. A. Harrison had learned of impending oil developments in the vicinity of appellant's land; that they had represented to him that they were making an effort to sell said land to the State of Texas to be used as an air-port when they knew, prior to the execution of said option contract and the deed from appellant to P. F. Campbell, that it could not be sold to the State and that they had concealed said facts from appellant, and, acting as partners, had conspired to acquire said land for themselves at a price greatly below its market value, and that the title to the land was taken in the name of G. A. Harrison for the joint benefit of both. Appellant contends that a favorable finding on any of said issues would have entitled him to the relief sought.

It is the established rule in this State that, as against an instructed verdict, all testimony favorable to the party against whom such judgment is rendered must be taken as true and that the losing party must be given the benefit of all facts, circumstantial or otherwise, bearing on his cause of action as well as all reasonable inferences arising from the evidence. Bragg v. Houston Electric Co., Tex.Civ. App., 264 S.W. 245; Needham v. National Insurance Co., Tex.Civ.App., 97 S.W.2d 1016; Thomas v. Postal Co., Tex.Com. App., 65 S.W.2d 282.

Appellees contend that appellant failed to prove any material false representation or concealment by appellees and that he had affirmatively proved by his own testimony that other considerations caused him to consummate the sale and that therefore there was no issue of fact to be submitted to the jury. They contend further that appellant, having executed the deed of March 6, 1937, and received the consideration therefor with full knowledge, while the transaction remained wholly executory, that G. A. Harrison was the real purchaser, that he was not entitled to cancellation of said deed on the grounds that either P. F. Campbell or G. A. Harrison had abused their relation of trust, and that he had thereby condoned and waived the fraud, if any, and had waived his right of action for cancellation and for damages.

The rule is well established that no action for fraud arises in favor of one who is unable to show falsity and that the truth or falsity of a fact is to be judged as of the time when the representations were made and that their character cannot be affected by subsequent events (20 Tex. Jur., 37, Sec. 19), and further, that to constitute actionable fraud the misrepresentations or concealment complained of must be in respect to a material fact. 20 Tex. Jur. 35, sec. 18. And that "In order for one to be entitled to maintain a legal or equitable action based on fraudulent misrepresentations or promises he must have relied thereon; in other words, the misrepresentations must not only have been made but must have contributed to the injury alleged to have been suffered; they must have induced the making of the contract or the entering into the transaction. There can be no liability when the statements made did not affect the actions of the persons claiming to be defrauded." 20 Tex.Jur. 51, sec. 29.

Appellant bases his allegations of fraud largely on the recitations in said option contract and on the fact that G. A. Harrison, in his letter to P. F. Campbell dated March 2, 1937, which was forwarded to appellant, had stated that he was purchasing said land for the purpose of holding it for the State of Texas for air-port purposes, when, appellant contends, the record shows that Harrison had ascertained on or about January 23, 1937, that the land could not be sold to the State as an air-port.

The record shows that appellant had, by letter to P. F. Campbell, dated February 21, 1937, requested that the deal with the State be called off; that by letter dated February 25, 1937, P. F. Campbell had informed him that he had contracted to sell the land to G. A. Harrison with the understanding that it was to be sold to the State for an air-port, if possible, otherwise to any one who would buy it; that Ben F. Anderson, appellant's attorney, had notified P. F. Campbell prior to the execution of said deed that appellant had decided to sell the land regardless of the option and that appellant, on cross-examination, testified that he had signed said deed because he thought it would be better to let him have half of the royalty rather than take a chance of losing all of it in the event they got a dry hole.

Under the above facts it is apparent that if appellant did not wish to sell to the State, the fact that he thought that he was selling to some one to hold for the State could have had no effect on his actions and such representations and concealments, if any, could not have induced him to make said deed to P. F. Campbell.

Appellant contends that, since a fiduciary relationship existed between himself and G. A. Harrison, the purchase of said land by Harrison without having made a complete disclosure of all material facts to the principal, a presumption of unfairness arises and the duty devolves on the fiduciary to show that his dealings with his principal were open, fair and honest.

While it is unquestionably true that an agent without the knowledge and consent of his principal cannot purchase the property of his principal for himself and that upon discovery that the agent has purchased the property for himself the principal may recover the property from the agent, it is equally true that where the principal knows that the agent is purchasing for himself and is familiar with all facts connected with said purchase and carries out an executory contract after he has full knowledge that the agent is the beneficiary therein, he will be held to have ratified said contract and he cannot thereafter recover the property from the agent. Texas Brokerage Co. v. John Barkley & Co., 60 Tex.Civ.App. 466, 128 S.W. 431; Samuel v. Branche et al., Tex.Civ.App., 211 S.W. 841.

This rule is followed in 12 R.C.L., page 413, section 159, which reads: "It is generally held that one who is induced by fraud to enter into a contract, and who, on discovery of the fraud while the contract remains wholly executory, nevertheless executes it on his part, or requires performance on the part of the other party, thereby waives the fraud and cannot subsequently maintain an action for damages therefor. Reasons given for this rule are that in such cases the fraud is really consummated and the damages incurred by such performance, and that to permit a recovery thereafter would virtually be to allow a recovery for self-inflicted injuries, and to permit the complaining party to speculate upon the other's fraud. It is deemed to be the duty of the defrauded party on discovering the fraud to elect whether he will perform or rescind. If he elects to perform, he thereby, in effect, makes a new contract, and to permit him under those circumstances to recover for a fraud would be to do violence to every rule upon which compensatory damages are allowed. The rule is not changed by the fact that the person guilty of the fraud insists on performance, and that the defrauded party intends to perform and then sue to recover the loss growing out of performance. Nor can the defrauded party save his right to sue by notice that he will do so if he perform, and exact performance with full knowledge of the facts which rendered performance non-obligatory."

The above rule is followed in the following cases: Allen v. Lasseter, Tex.Civ. App., 35 S.W.2d 753, 755; Wortman v. Young, Tex.Com.App., 235 S.W. 559; and Kingman & Co. v. Stoddard et al., 7 Cir., 85 F. 740.

In the instant case the record shows that prior to the execution of the deed of March 6, 1937, appellant had ample opportunity to become familiar with the value of his land and of the minerals thereunder, in that he had, a short time prior to the execution of said deed, sold royalties thereunder for $60 per acre in one instance, and $100.00 per acre in another; that he knew of the formation of the drilling block in the vicinity of the land, and that drilling was in progress; that prior to said sale Ben F. Anderson, his attorney, had, at appellant's instance, made an investigation of conditions surrounding said land and had advised him as to his legal rights under said contract, and in a letter to P. F. Campbell had stated

that appellant had thought the matter over and had decided to· sell the land, regardless of the option, for the price agreed upon. Appellant had full knowledge that G. A. Harrison, his alleged agent, was the purchaser of the land and had been informed by P. F. Campbell that Harrison would let the Government have the land if it would take it, and if not he, Harrison, would own it.

Under the above facts we think that appellant waived his right for cancellation of said deed and for damages, and that no issues of fact were raised by the testimony, or the circumstances connected therewith, which should have been submitted to the jury, and that no error was committed by the trial court in instructing the jury to render a verdict in favor of defendants and in rendering judgment thereon.

For the above reasons, the judgment of the trial court is in all things affirmed.

Affirmed.