A. B. ALLISON V. G. A. HARRISON ET AL.

No. 7696. Decided November 12, 1941.
(156 S. W., 2d Series, 137.)

*Maurice M. Davis* and *Frank L. Morris,* both of Houston, for plaintiff in error.

Where the evidence showed that the agent concealed from his principal the fact that the agent was advised that the land could not be sold to the State of Texas for an airport, which fact was material, and that the principal did not know the true facts until many months after the transaction in which he authorized said agent to sell the land, although said agent was and had been his fiduciary representative for many years in handling his properties, and the evidence further showed that the principal would not have signed the deed if he had known the true facts, it was error for the court to hold that such facts were not material. Hahl v. Kellogg, 94 S. W. 389; Needham v. American National Ins. Co., 97 S. W. (2d) 1016; Johnson v. Peckham, 132 Texas 148, 120 S. W. (2d) 786.

*Harris & Harris* and *G. P. Hardy, Jr.*, all of Bay City, *W. C. Gray*, of Palacios, and *Fahey & Cooper*, all of Houston, for defendants in error.

Since the plaintiff had conveyed the land and one-half interest in the minerals, and received a valuable consideration for same, with the knowledge that while said contract was still executory his agent was the real purchaser, and, having discovered the fraud, acted in performance and affirmance of same, waived his right of action for cancellation and recission of same and for damages. Allen v. Lasseter, 35 S. W. (2d) 753; Samuel v. Branche, 211 S. W. 841; Thames v. Smith, 280 S. W. 859.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

This suit was by A. B. Allison and wife for cancellation of a conveyance of 290 acres of land and certain royalties thereon, and for a reinvestment of title; and in the alternative for damages. The suit was originally against P. F. Campbell and G. A. Harrison. Campbell died about three months before the case was tried and Mrs. Campbell, executrix of his will, was made co-defendant with Harrison. Mrs. Allison was dismissed from the suit. The cause as now before us is by Allison, plaintiff in error, against Mrs. Campbell, executrix, and Harrison, defendants in error.

The trial court at the conclusion of plaintiff's case and before defendants had offered their case, instructed a verdict against plaintiff. The Court of Civil Appeals affirmed the judgment. 134 S. W. (2d) 399.

The suit is predicated upon misrepresentations and concealment of material facts by Campbell and Harrison in procuring from Allison a conveyance of the land to Campbell on March 6, 1937, and from Campbell to Harrison on March 10 following.

Plaintiff alleges that about September, 1936, Campbell and Harrison learned that a drilling block in the vicinity of plaintiff's land near Palacios, Matagorda County, had been formed and that it was planned to drill a test well on the block for oil and gas; that plaintiff was a non-resident, seventy-one years of age, resided at Charleston, Illinois, and for a long period of

time had not seen his land and had entrusted its care to his friend Campbell as his agent and fiduciary and relied upon him for information concerning the land; that after Campbell and Harrison had acquired knowledge of the drilling test to be made they concocted and perpetrated a fraud upon plaintiff by false representations and concealments in order to get his land and a part of his royalties at a price greatly below their market value; that through a course of letters and written communications they represented they were desirous of selling the land to the State for an airport provided plaintiff would sell at $30.00 an acre ($8,700.00) with reservation of half the minerals; that Campbell and Harrison represented they were planning to sell the land to the State for an airport and that in order to effect a sale a long period of time would have to be allowed, and it would be necessary for plaintiff to execute an instrument in writing to be presented to the legislature or its committees (showing the land could be delivered by them); that in reliance upon the representations made, plaintiff executed, in the latter part of 1936, an agreement giving Campbell the exclusive right until July 1, 1937, to sell the land upon the terms just stated; that Campbell in turn placed the same in the hands of Harrison, representing to Allison that he had done so because Harrison and he were actively negotiating a sale to the State; that Campbell and Harrison, acting in conjunction, made such representations concerning the deal as caused, and were calculated to cause, plaintiff to believe that they, as his confidential agents, were pressing the airport deal.

Plaintiff alleges that about the latter part of February, 1937, trading in leases and mineral interests became very active in the vicinity of the land; that the test well was shut down and the parties drilling same became very active in such trading, and in fact made through Harrison many royalty deals during the latter part of February and the early part of March, 1937; that shortly prior thereto (about February 21, 1937) plaintiff learned through sources other than Campbell and Harrison of drilling operations in the vicinity of Palacios and wrote Campbell requesting that they call off the deal with the State, offering to pay them for their efforts in that behalf; that on February 25, Campbell wrote plaintiff that before receiving his request he had sold the land to Harrison upon the same terms set forth in the exclusive sales agreement with him (Campbell) and that Harrison was taking title to the land to hold for the State until the Legislature would reimburse him; and that he (Harrison) had gone so far in the deal with

the State that it was impossible to "back out"; that the price was fair and plaintiff, by reservation of his part of the minerals, would receive more than the land would ever have brought under any other circumstances; that the representations caused, and were calculated to cause, plaintiff to believe a sale of the land had been consummated by Harrison with the State officials, or that the closing of such a deal was in such state that the only thing remaining to be done was to obtain the money from the Legislature, and that it was impossible to then "back out"; that the deal "would have to be closed in order to protect plaintiff, Campbell and Harrison"; that plaintiff was thereby induced to execute the deed of March 6, 1937, conveying the land to Campbell, for the purpose stated, and that Campbell, as plaintiff's agent and trustee, on March 10, 1937, in keeping with Harrison's suggestion theretofore made, conveyed the land to Harrison.

It is alleged that prior to the time the deed was executed to Harrison, he and Campbell, or Harrison, acting for himself and Campbell, had highly profitable deals then pending, unbeknown to plaintiff, for sale of a part of the royalty on the land; that they had already ascertained at such time that the State would not take the land and knew plaintiff believed a deal had been agreed upon with the State subject to obtaining the purchase money from the Legislature; that notwithstanding their fiducial duty they withheld and concealed such facts from plaintiff and deliberately sought to keep him from ascertaining same by writing him that "big offers" for leases and royalties had been heard of but that those receiving same "had failed to see the drafts paid"; and that the well was in "plenty of trouble" and plaintiff should be congratulated in getting the land off at $30.00 per acre, which was a fair price.

Plaintiff further alleges that he did not learn of the facts which Campbell and Harrison concealed from him nor of the falsity of the misrepresentations above referred to until a short time before the filing of this suit; that the land and minerals on the dates of March 6, 1937, and March 10, 1937, were of a market value greatly in excess of $30.00 per acre and were reasonably worth not less than $36,250.00; that by reason of the false representations, statements and concealments plaintiff had been damaged in the sum of $27,500.00 (its true market value less $8,700.00); and that but for such representations and concealments he would not have executed the conveyance in question.

Plaintiff made his allegations in such fashion as to predicate recovery upon the theory, first, that Campbell became his trustee and that the deed to him, and from him to Harrison, created a constructive trust; and prayed for recovery of the land accordingly, with allowance of credit for the $8,700.00 turned over to him. He so reiterated in his pleadings the basic facts as to set up, in the alternative, an action for damages in the sum stated above, and, accordingly, prayed for such recovery.

Defendants, in addition to denying plaintiff's allegations, averred that all statements of fact made by Campbell and Harrison to plaintiff were true and that all expressions of opinion made by Campbell to plaintiff were the true opinions of Campbell; that plaintiff knew all of the material facts in connection with the negotiations for the sale described by plaintiff's petition before he executed the deed to Campbell and that notwithstanding such knowledge he, on the advice of counsel, executed and delivered the deed to Harrison and received $8,700.00 cash in payment therefor; that such delivery and payment were made shortly after March 6, 1937, while an oil well was being drilled near the land involved and at a time when no person knew whether oil would be discovered as a result of the well being drilled; that plaintiff on advice of counsel took the chance of selling the land and "reserving about half of the minerals therein to himself, receiving a big price for what he was selling, knowing that if oil were not discovered in said well then drilling he had made an excellent sale and intending that if oil were not discovered to let said sale stand, but also intending that if oil were discovered to declare that he had been defrauded, and to seek to set said sale aside and to attempt to recover damages for the alleged fraud; that if there were any fraudulent representations made by Campbell and Harrison, plaintiff, in making the conveyance to Campbell, did not rely thereon but upon the advice of his attorney, and other considerations.

The pleadings may be taken, in general, as a fair statement of the respective contentions of the parties.

The Court of Civil Appeals sustained the action of the trial court in withdrawing the case from the jury and instructing a verdict in favor of defendants. It did so upon the view that plaintiff, at the time he executed the deed to Campbell on March 6th, knew Harrison was the purchaser of the land and

had been informed by Campbell that Harrison would let the State have the land if it would take it, and if not, "Harrison would own it"; that Allison "had ample opportunity to become familiar with the value of his land," and knew that drilling was in progress near the land; that he had the benefit of local counsel (Ben F. Anderson) who advised Campbell that Allison "had thought the matter over and had decided to sell the land for the price agreed upon"; and that in the light of these facts Allison waived his right to cancel the deed and for damages, and he, as a matter of law, ratified the sale to Harrison. In brief ratification by Allison of the sale is the theory upon which the Court of Civil Appeals affirmed the action of the trial court in withdrawing the case from the jury.

The assignment of error upon which the writ was granted is predicated primarily upon the ground that the record shows Campbell and Harrison concealed from Allison certain material facts, including the fact that the deal with the State was off; and that Allison, had he known such facts, would not have executed the conveyance in question.

**1** The assignment is sustained. It is a generally recognized rule that a person cannot act as agent for another and himself become the buyer. Shannon v. Marmaduke, 14 Texas 217; Nabours v. McCord, 100 Texas 456, 100 S. W. 1152; the holding (2, 3) in Villiva v. Harrison (wr. dis.), 102 S. W. (2d) 520; 2 T. J. p. 592, sec. 181; 3 C. J. S. p. 20, sec. 144; 2 Am. Jur. p. 205, sec. 254. It is pointed out in the recent case of Burleson v. Earnest et al, 153 S. W. (2d) 869, that for reasons founded in public policy the law does not permit an agent to assume any relationship antagonistic to his duty to his principal, and that the underlying reason for the rule is "to shut the door against temptation," citing and quoting from Justice Wheeler in Shannon v. Marmaduke, supra.

**2** It is also settled that an agent in dealing with a principal on his own account owes it to the principal not only to make no misstatements concerning the subject matter of the transaction, but also to disclose to him fully and completely all material facts known to the agent which might affect the principal; and that unless this duty on the part of the agent has been met, the principal cannot be held to have ratified the transaction. Id. supra. Texas Jurisprudence (Vol. 2, p. 594, sec. 182), citing in support of its statement the Marmaduke case supra, and other cases, says:

"For example, if an agent for the sale of his principal's property should buy it himself, either directly or through the instrumentality of a third person, the purchase is voidable at the option of the principal; the transaction will be set aside, even if the agent proves that the price is fair and reasonable and that there is no element of undue advantage; nothing will defeat the principal's remedy except his own confirmation *after full knowledge*." (Italics ours).

**3** Plaintiff testified he would not have conveyed the land to Harrison had the full facts been disclosed to him. We have concluded, after a painstaking examination of the record, that, to say the least, a question of fact is presented as to whether he would have done so; and that the Court of Civil Appeals erred in sustaining the action of the trial court in withdrawing the case from the jury.

The factual allegations of plaintiff's petition as summarized above set forth a fair statement of the facts adduced upon the trial, making due allowance for their statement most strongly in plaintiff's favor because of the instructed verdict against him.

It was admitted by defendants upon the trial that Campbell had been Allison's local agent for more than 25 years and had looked after his land during that time and throughout the transactions here involved. There is evidence that Harrison knew of this relation. He called Campbell to find out if the acreage was available "for an airport." There is evidence tending to show an unbroken series of events from this time, eventuating in the agency of Campbell and Harrison to sell plaintiff's land and finally in Harrison's becoming the purchaser of it. On October 31, 1936, Campbell wrote Allison that he had been talking to "our county commissioner" (Harrison) about his (Allison's) land and that Harrison had suggested he thought it *might be sold to the State for a municipal airport* if it could be had for $30.00 an acre ($8,700.00) with half the minerals reserved. On December 4th he wrote that after another conference with Harrison: "We have decided to go after the deal for you * * *." Plaintiff's allegations, which are supported by the testimony, detail sufficiently the procuring by Campbell from Allison on December 18th, in keeping with suggestions made by Campbell and Harrison, of an agreement giving Campbell the exclusive right for six months to sell the land and the delivery of the agreement by Campbell to Har-

rison; also the occurrence between then and February 21st when Allison wrote Campbell inquiring if the deal with the State could not be called off. In a reply letter Campbell advised Allison that the land together with one-half the royalty had already been sold to Harrison upon the terms stated in the exclusive sales agreement and that he was enclosing a deed for execution which he could return to him for collection of the $8,700.00. Campbell further stated that the well had finally hit shale but disparaged, as he had in other communications, the probability of bringing in an oil well, saying in this connection:

"There is no good report this morning and still in shale and I am of the opinion that it is very doubtful if they can go thru to even find oil which may not be there, but if not it is up to Mr. Harrison now to get the state to take the land or to own it * * *. So I congratulate you in getting it off and at a fair price and still having a quarter left and no land to bother with and pay taxes on. * * * I am not going to charge you anything and Harrison is not expecting to pay me anything either, * * *."

Only one other letter need be quoted from, that of March 2, 1937, written by Harrison to Allison's local attorney for Allison's information, which says in part:

"A great deal of time and effort has been spent on this proposition (sale for an airport) and it has gone so far that it is impossible to back out * * * and in order to protect Mr. Allison, yourself and my own interests, I am forced now, even though the legislature has not made the money available to me, to close this option and carry it myself until such time as they see fit to reimburse me. While I can see this probably will be a burden, yet I am in so deep that I would not for one moment consider retracting any part of our deal. I feel the price is fair and that with Mr. Allison reserving a part of the minerals he will receive much more than this land would have ever brought him under any other circumstances."

The foregoing statements concerning the deal with the State were made in the face of knowledge on the part of the agents of Allison that the land could not be sold to the State. Harrison himself testified that on January 23, 1937, he learned a deal with the State could not be made. The testimony not only discloses that this fact was not communicated to Allison but supports the conclusion it was concealed from him. Its ma-

teriality is beyond cavil. While Allison knew he was deeding the land to Harrison it is inferable that he would not have done so but for the belief that the deal with the State could not be called off, and, as Harrison wrote Campbell, would have to be closed in order to protect "Mr. Allison; yourself and my own interests."

It is unnecessary to refer in detail to other concealments. It is sufficient to point out that at the time of the sale to Harrison he and Campbell had deals for the sale of royalty pending for more than enough to pay for the land, and that the transaction whereby Harrison purchased the land, and that whereby he sold a part of the royalty thereby acquired, were closed simultaneously. The proceeds of the checks for the royalty sales were the same that paid Allison for the land, and were in excess of such amount, and were payable to Campbell and Harrison jointly.

The authorities cited by the Court of Civil Appeals in support of its holding of ratification are grounded upon the fact that the principal acted after he had full knowledge of all material facts that might have affected his decision in the matter involved. While Allison knew the identity of the purchaser he might not have deeded the property to him if he had known the State deal did not have to be carried out. We cannot hold as a matter of law that Allison would have executed the deed to Harrison had such fact not been withheld from him; and it is immaterial upon this point that other considerations may have contributed to its execution. Buchanan v. Burnett et ux, 102 Texas 492, 119 S. W. 1141; Broaddus Co. v. Binkley, 126 Texas 374, 88 S. W. (2d) 1040.

It follows from what has been stated we are of opinion that upon the record before us and the authorities cited, there is evidence to support a recovery by plaintiff under findings favorable to him, upon the constructive trust theory, or, in that alternative, for damages. In addition to the authorities cited above, see Faville v. Robinson, 111 Texas 48, 227 S. W. 938, 213 S. W. 316; Hendrix v. Nunn, 46 Texas 141; Schneider v. Sellers, 98 Texas 380, 84 S. W. 321; Johnson v. Peckham, 132 Texas 148, 120 S. W. (2d) 786, 120 A. L. R. 720; Martin v. Martin, 130 S. W. (2d) 863, holding (3); Texas Brokerage Co. v. Barkley & Co., 128 S. W. 431; Parks v. Shoellkopf, 230 S. W. 704; Miller v. Himebaugh, 153 S. W. 338.

The judgments of the Court of Civil Appeals and of the trial court are reversed and the cause is remanded.

Opinion adopted by the Supreme Court November 12, 1941.