RUSSELL *et al. v.* MABRY, Tax Collector.

[99 So. 2.  No. 23800.]

(Division A. Jan. 21, 1924. Suggestion of Error Overruled March 3, 1924.)

DRAINS. *Assessment and levy to pay preliminary drainage district expenses incurred without notice void.*

Under chapter 195, Laws of 1912, as amended by chapter 269, Laws of 1914, an assessment and levy of taxes against lands to pay preliminary expenses incurred in forming a drainage district is void where landowners in the proposed district are not given notice of such assessment and levy.

APPEAL from chancery court of Newton county. HON. G. C. TANN, Chancellor.

Suit by Mrs. Kate Russell and another against W. C. Mabry, Tax Collector. From a decree sustaining a demurrer to the bill, plaintiffs appeal. Reversed and remanded.

*R. L. Bullard,* for appellants.

This was a proceeding by two complainants to enjoin the sale of their property for the collection of a tax. The proceeding is under authority of section 533, Code of 1906. It is alleged that the tax was unlawfully levied be-

cause the property owners had no notice, actual or constructive, and the proceeding is therefore to take their property without due process of law, in violation of section 14 of the state Constitution, and of the Fourteenth Amendment to the Federal Constitution.

The court sustained a demurrer to the bill and dismissed it, and rendered a decree against both complainants for the total tax held to be due from each, and the total damage upon the whole. An inspection of the petition and the notice will show that it is impossible to tell what was embraced within the proposed drainage district, or even to approximate it, and it was impossible for any landowner living in that part of Newton county to know that there was any probability that the board of supervisors would at any future term take any action that might result in a tax against his land.

The district was to "include all lands between the points hereinafter set forth on Potterchitto, Turkey, Bogue Falema and Tarlow Creeks to which benefit would accrue by a drainage canal."

The points set forth are as follows: "Beginning on Potterchitto Creek at N. O. M. and C. Railroad in section 23, township 6, north, range 11 east; on Turkey Creek where the Jones Branch empties into Turkey Creek in section 2, township 6, north, range 11 east; on Tarlow Creek at the point where Bethel Creek empties into Tarlow Creek in section 10, township 5, north, range 11 east; on Bogue Falema Creek at the range line, etc., and end where Potterchitto Creek empties into Chunkey Creek."

"The points" are definite enough, but where do we go from each point? We have four lines from those starting points extending down the thread of four streams to where the waters of all four of them are finally joined. That would describe four irregular lines but would not describe any region, territory, or district.

Finally it was not proposed that any definite territory was to be embraced in the district, but only such lands as

would thereafterward be found to be those "to. which benefit would accrue by a drainage canal." The original petition was insufficient under chapter 269, Acts of 1914.

In the formation of a drainage district the board of supervisors acts judicially, and is governed by the laws applicable to courts of special and limited jurisdiction. Its act in levying the tax is also governed by the same principles. The petition and notice are jurisdictional and if the petition, which the notice follows, is not sufficient to apprize the property owners that their property is embraced within the proposed district, the entire proceeding is void. It is necessary for the petition to contain in a general description all of the territory proposed to be embraced within the district, the description to be definite enough to enable a person owning property within it to know that his property was being dealt with in that way.

This being a proceeding *in rem,* constructive notice is sufficient, but it must be notice which within itself is sufficient to apprize the person of the fact that the tribunal is dealing with the right or property to be affected. For a proceeding *in rem* of this kind see *Brown* v. *Levy Commissioners,* 50 Miss. 480.

When a drainage district is to .be formed by the judgment of the board of supervisors, the "thing," the region, the district is brought within the custody of the court by means of the petition. The published notice is the process, and if it is not sufficient to apprize the owners of property to be included and subjected to the burdens of taxation, it violates the Fourteenth Amendment, for it is a taking of property without due process of law. See *Lent* v. *Tilson,* 140 U. S. 318, 35 L. Ed. 419; *Falbrook Irrigation Dist.* v. *Bradley,* 164 U. S. 112, 41 L. Ed. 369, and authorities cited.

The tax was levied without notice of any sort, and without any opportunity to be heard. After the expiration of four regular monthly meetings of the board, at

134 Miss.—16

which nothing was attempted, the temporary commissioners carried a petition before the board wherein they represented that they had borrowed large sums of money to pay themselves, their attorney, the surveyor, and other expenses that had been incurred by them, and for which they say they had pledged the lands in the proposed district, whatever that district was.

No notice had been given by the commissioners of their intent or purpose to file this petition; no notice was given of the pending of it when it was filed, but at the very time it was filed the board proceeded to levy an acreage tax against the lands arbitrarily selected by them, including the lands of appellants, amounting to 39 3/10 cents per acre. No notice was given of the fact that the tax had been levied, and the first notice that appellants had that the tax had been levied against their lands was contained in the advertisement informing them that it was the purpose of the tax collector of said county to sell their lands.

There can be no justification for the levy of the tax without any notice whatever to the landowners and without any possibility whatever for them to be heard. Authority in support of this proposition would hardly seem to be necessary, but the following are in point: 8 Cyc. 1108; *Hegar* v. *Reclamation District,* 111 U. S. 701, 28 L. Ed. 569; *Paulsen* v. *Portland,* 149 U. S. 30, 37 L. Ed. 673; *Davis* v. *Davison,* 96 U. S. 97, 24 L. Ed. 616.

*Flowers & Brown,* for appellee.

It is contended by complainants that the petition and order and notice were not sufficient in law to give the board of supervisors jurisdiction of the matter because it does not describe in specific and definite terms the exact land to be embraced in the district.

The record clearly shows that the petition did describe the lands as well as it was possible to describe them. We call attention to the fact that this petition, as stated

in the bill, set out the exact starting point of the canal.

Section 1, chapter 269, Laws of 1914, provides: "That when ten per cent of the owners of real property within a proposed drainage district shall petition the board of supervisors to establish a drainage district to embrace their property, describing generally the region which it is intended shall be embraced within the district, it shall be the duty of the board of supervisors to enter upon its minutes an order," etc.

Since only a general description is required, we submit that the bill shows on its face that the petition filed in this case was sufficient. It set out in clear terms exactly where the district was to start and where it was to end. It named the sections, townships and ranges through which it was to extend. Exactness is not demanded by the statute. A petition describing generally the region to be drained is all that is required. No duty rested upon the board at this meeting to determine and set out the exact description and location of the lands to be included in the proposed district. Such information can only be had by the survey, hence the law provides for the appointment of an engineer to make this survey and file his report on the project. This identical question was presented in the case of *Wooten* v. *Hickahala Drainage District,* 77 So. 795. See, also, *Jones* v. *Belzoni Drainage District,* 102 Miss. 796, 59 So. 921; *Board of Supervisors of Yazoo County* v. *Grable,* 72 So. 777.

The contention of complainant that the levy of the special tax is in violation of the "various and divers" provisions of the Constitution of the state and United States is not well taken. The law authorizes the temporary commissioners, by and with the consent of the board, to provide the money to repay the preliminary expense incident to the organization of the district. It would be impossible to proceed to the organization of a district if such were not the case.

"When any public work is authorized it rests with the legislature, unless restrained by Constitutional provisions, to determine in what manner the means to defray its cost shall be raised." *County of Mobile* v. *Kendall,* 102 U. S. 691, 26 L. Ed. 238. The legislature has power to create or provide for drainage districts, and it may do so upon such terms as to it seem best. *Northern Drainage District* v. *Boliver County,* 71 So. 380. The preliminary expenses incurred in the creation of a district being essential to its creation it must follow that the legislature has power to provide means for this expenditure.

We submit that the wisdom of the legislature in providing for the payment of the preliminary expense by an acreage tax in event the district is not perfected is so apparent as to need no explanation.

Argued orally by *R. L. Bullard,* for appellant.

HOLDEN, J., delivered the opinion of the court.

This was a bill filed by two taxpayers to enjoin the collection of a tax levied against certain lands in Newton county for the benefit of and to pay expenses incurred on a proposed drainage district. From a decree sustaining a demurrer to the bill, this appeal is prosecuted.

The demurrer having admitted the truth of the allegations of the bill, we shall state only the substance of those parts of the bill which are necessary to an understanding of the decision. In July, 1919, a petition signed by ten per cent. of the owners of real property in the proposed drainage district requested the board of supervisors to establish the district, proceeding under chapter 195, Laws of 1912, as amended by chapter 269, Laws of 1914, and the amendments thereto.

The board published notice that the petition would be heard. After this the board passed an order declaring that a majority of the landowners owning the land proposed to be included in the district did not oppose the

organization of the district. Thereupon temporary commissioners and a surveyor were appointed, who, at a later day, petitioned the board for authority to borrow five thousand dollars and pledge the assessment to be made against the lands in the proposed district for the payment of such sum, in order to defray the expenses of making the survey and carrying through the preliminary proceedings looking to the organization of the district. The board at the same meeting passed an order authorizing the borrowing of the money and pledging the lands for its repayment. Afterwards a report was made by the commissioners and engineer. The matter was then taken under advisement by the board for several weeks until the next meeting when the board recited on its minutes that a majority of those owning a third of the land had petitioned against the organization of said district, and thereafter at another meeting the board passed an order abandoning the project and refusing to go farther with the proposed district, and ordered that a meeting to be held for that purpose be called off. And thus the matter was closed, for the time being at least.

Some months after this the commissioners petitioned the board, without the knowledge of or notice to any of the landowners in the district, that they had expended large sums of money in the district and requested that the board make its order levying the tax against the real property in the district in a sufficient sum to raise the money needed to pay the outstanding certificates. The board thereupon, without notice to any of the property owners, levied an acreage tax of thirty-nine and three tenths cents per acre against the real property in the district, and this tax was attempted to be collected by the tax collector when this injunction was sought to restrain him by the appellant property owners.

The main point in the case which is decisive of this appeal is whether or not the assessment against the lands owned by the property owners in the district can be made

and enforced where the owners have had no notice of the
assessment except the first preliminary notice published
in the paper, which designated the lands to be included in
the proposed district by ''describing generally the region
which it is intended shall be embraced within the dis-
trict,'' under section 1, chapter 269, Laws of 1914.

It is contended by the appellant that the description
in the first petition is indefinite and void, but that, if
mistaken in this, then it is contended the assessment and
levy are void because there was no notice to the land-
owners that the assessment of their lands and a levy of
the tax would be made.

We have reached the conclusion the position of appel-
lant is well grounded. We deem it unnecessary to quote
in this opinion the petition that was filed by ten per cent.
of the landowners asking that the district be formed, but
we have read and carefully considered this petition, and
while we do not decide, because it is unnecessary to do
so, that this petition is not sufficient to meet the require-
ments of the statute which provides that a petition for
such proposed district may be presented and published
which ''describes generally the region which is intended
shall be embraced within the district,'' it seems clear to
us that since the description of the land in this prelimi-
nary petition is the only description that we find in this
record, and is the only notice to the landowners ever
published, and as it appears that the property owners in
the district had no notice at any time that their lands
would be assessed and levied against for the payment of
the preliminary expenses incurred in the district, the tax
assessment and levy are void and cannot be collected.

This general preliminary description, which as we have
said is the only one in this record, is not sufficiently defi-
nite to constitute notice to the landowners that their lands
would be assessed even if this description had been given
in a notice at the time the assessment and levy was made
against the land.

The legislature undoubtedly intended to avoid coming in conflict with the due process clause of our Constitution, and the act in question in our judgment does not violate the Constitution, but the requirements must be complied with in giving notice to the landowners so that they may be heard before the assessment is made against their lands. This was not done in the case before us, and for that reason the assessment is void, and the decree of the lower court sustaining the demurrer is reversed and the cause remanded.

*Reversed and remanded.*