Joseph A. Carluccio, complainant-appellant,

*v.*

607 Hudson Street Holding Company, Inc., defendant-respondent.

[Submitted October 29th, 1947.   Decided February 19th, 1948.]

*Mr. Bernard S. Glick (Mr. C. Earl Brugler,* of counsel), for the complainant-appellant.

*Mr. Sylvan S. Cohen,* for the defendant-respondent.

The opinion of the court was delivered by

FREUND, J.

Joseph A. Carluccio appeals from a decree of the Court of Chancery dismissing his bill for specific performance of a written contract for the sale of realty of which he is the assignee.

The premises, No. 607 Hudson Street, in the City of Hoboken, a four-family dwelling house, is owned by respondent, a holding company, for Mr. and Mrs. William Fendler. They were acquainted with Sol Rosenbaum, a real estate broker. In February, 1946, Rosenbaum solicited Fendler with a view to selling the property. In ensuing conversations the price was discussed, Fendler asking $15,000 and then $13,500 for the realty and furnishings, while Rosenbaum stated that the property, exclusive of the furnishings, was worth $9,000, and finally Fendler agreed to sell for $9,000 for which Rosenbaum was to receive a commission of $250. A few days later on February 14th, Rosenbaum called at the home of the Fendlers with a contract for the sale of the property for $9,000 payable thus: $500 on execution; $5,200 on delivery of deed; and $3,300 "by assuming the mortgage at present a lien on the premises." The purchasers named in the contract were Sidney Wohle and Roslyn Wohle, husband and wife, of Brooklyn, New York. The contract when presented to respondent already bore the signatures of the purchasers with Rosenbaum as witness, and he paid respondent the deposit in cash. The contract provided that the vendor pay to Rosenbaum upon closing of title a commission of $250 "in consideration of services rendered in consummating this sale." It fixed May 1st, 1946, as the date for closing of title.

Notwithstanding the provision in the contract for the payment of commission, five days later Rosenbaum again called upon the Fendlers and obtained their signatures to an exclu-

sive right to sell the property for three months from said date for $9,000 and upon a sale he was to receive $250 "minimum commission." He obtained this, he said, "for protection."

The purchasers, Sidney Wohle and Roslyn Wohle, are related to Rosenbaum; Roslyn being his niece. She did not testify but Wohle did. He said that this was his first real estate venture; that he did not inspect the property nor did he know the kind of property it was or its income; that he and his wife resided in Hoboken, and not in Brooklyn, as the contract stated; and that he did not know or meet the Fendlers. The contract was brought to him for signature by Rosenbaum, to whom, he testified, he gave the $500 deposit in cash which he did not withdraw from any bank but had in his pocket. A few days later, on February 23d, the Wohles assigned the contract to appellant, Carluccio, by signing an assignment on the reverse side of the contract of sale, also witnessed by Rosenbaum. Though Wohle did not ask for more than the return of his deposit, Rosenbaum gave him an additional $100 "for his trouble," paying him $600 in cash. Wohle had no dealings with and had never met Carluccio. So that, the Wohles, the vendees in the contract, never dealt with nor met the Fendlers, officers of the vendor corporation, nor the appellant, their assignee. Rosenbaum negotiated the contract and the assignment; he paid the deposit to respondent and the consideration for the assignment to Wohle.

Appellant, Carluccio, is a real estate broker in Hoboken, and Rosenbaum is associated with him in his office, paying Carluccio a monthly stipend for desk space and secretarial help. They share commissions "50-50" when they sell property as co-brokers. Carluccio testified that he did not know the Wohles nor their address. He gave Rosenbaum $600 in cash to be paid for the assignment, for which he had no check or receipt other than the assignment, which recited the consideration as one dollar. He testified that he did not inspect the property nor did he meet the Fendlers until after the assignment to him; that he had no buyer but wanted the property for his own investment. On April 2d, he wrote respondent a letter saying: "We are prepared to close title. * * * Will you kindly instruct your attorneys to *inform*

*me when I may have my clients* ready for the purpose of closing this deal. \* \* \*"

Title was not closed on May 1st. To make time of the essence, respondent's solicitor on May 20 prepared a notice fixing May 23d, 1946, as the closing date. He telephoned Carluccio to ascertain the address of the Wohles. Carluccio was unable to give it but asked that the notice to the Wohles be sent in care of his office. And, the solicitor testified, then, for the first time, Carluccio told him that he was the assignee. A notice addressed to the Wohles, in care of Carluccio, and to him as well, was served. On the following day, May 21st, the solicitor for Carluccio addressed a registered letter to respondent's solicitor in which he advised him "that I represent Joseph A. Carluccio, the assignee of Sidney Wohle and Roslyn Wohle, and that my client will be ready to close title on this property on May 23d, 1946, at 10 A. M." This letter was received a day or two after service of the foregoing notice and a day before the closing date. At the time fixed for closing, the respondent was ready to deliver the deed to the Wohles but they did not appear. Carluccio attended, stating that he was the assignee. He tendered the cash consideration required under the contract and requested a deed, either to himself or to the Wohles. Respondent's solicitor testified that Carluccio did not produce his assignment nor a power of attorney from the Wohles, which he claimed he had, and therefore, respondent declined to have any dealings with Carluccio.

Subsequently, appellant filed his bill for specific performance, to which respondent filed an answer, setting up three defenses; that it had no notice of the assignment; that the vendees could not substitute the assignee as the assuming obligor on the existing mortgage on the property, and that the contract was obtained fraudulently. Respondent also filed a counter-claim bringing in Rosenbaum as a third party charging fraud and praying an injunction against the prosecution of a suit for commissions. The court concluded in favor of respondent on all its defenses and entered a decree dismissing complainant's bill. There was no formal disposition of the counter-claim but the result would operate as a bar to the maintenance of a suit for commission.

Appellant argues that the court erred in holding that the contract precluded an assignment without the consent of the vendor because it provided that part of the purchase price was to be paid by the vendee "assuming the mortgage at present a lien on the premises." The contract neither expressly nor by implication prevented an assignment; in fact, for the performance of the covenants and agreements, the parties bound themselves "and their assigns." When parties contract for personal liability, a vendee may not arbitrarily substitute another's liability. *Seacoast Development Co., Inc.,* v. *Beringer, 100 N. J. Eq. 295; Muller* v. *Riskind, 100 N. J. Eq. 258;* affirmed in *103 N. J. Eq. 20.* In the instant case, however, respondent, not even knowing the vendees, did not negotiate nor contract for their personal liability. *Moran* v. *Borello, 4 N. J. Mis. R. 344.* Apart from the conclusion we have reached, the provision for the assumption of the existing mortgage could not operate to prevent an assignment because the assignee offered to pay all of the purchase price in cash. Thus, personal liability of the assignors becomes immaterial and is no obstacle to the assignment. *Weidenbaum* v. *Raphael, 83 N. J. Eq. 17.*

We have concluded, however, that the discretionary remedy of specific performance was properly denied because the contract was fraudulently obtained. *King* v. *Morford, 1 N. J. Eq. 274; Miller* v. *Chetwood, 2 N. J. Eq. 199; Plummer* v. *Keppler, 26 N. J. Eq. 481.*

The case presented is a typical one of divided loyalty, or rather, disloyalty on the part of a real estate broker and calls for a reiteration of firmly established principles. A fiduciary relationship arises between a real estate broker and an owner by whom he is engaged to secure a purchaser for his property. "One who accepts employment as an agent to sell real estate for another, whether he be called a 'realtor,' or a 'broker,' or a 'real estate agent,' is most strictly bound, within the scope of his employment, to the duty of absolute loyalty to his principal." *Gordon* v. *Kaplan, 99 N. J. Eq. 390.* Absolute fidelity, good faith, full and frank disclosure of his relations to the purchaser and of all facts within his knowledge which are or may be material to the matters in

which he is employed are demanded of the agent. *Young* v. *Hughes, 32 N. J. Eq. 372; Gales* v. *Plainfield Trust Co., 121 N. J. Eq. 460;* affirmed in *122 N. J. Eq. 366; Goldstein* v. *Marsella, 136 N. J. Eq. 521;* affirmed in *137 N. J. Eq. 513; Wendt* v. *Fischer, 243 N. Y. 439; 154 N. E. Rep. 303.* We subscribe to the convictions so well expressed by Mr. Justice Cardozo, when he was Chief-Justice of the New York Court of Appeals, in the frequently cited case of *Meinhard* v. *Salmon, 249 N. Y. 458; 164 N. E. Rep. 545; 62 A. L. R. 1:*

"Many forms of conduct permissible in a workaday world for those acting at arm's length are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor, the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions. * * * Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court."

It seems impossible to escape the conclusion that the broker, Rosenbaum, supplied his relatives as "dummy" purchasers for his associate realtor, the appellant, who furnished the $100 paid them for their services. Not only did he expressly misrepresent their address to respondent but he probably did not disclose it to appellant. Appellant undoubtedly wanted to buy the property either for investment or resale, and used Rosenbaum for that purpose, leaving it to him to select a convenient "straw man." Though appellant became the assignee on February 23d, he deliberately concealed this fact in his letter of April 2d to respondent when he wrote "Will you kindly instruct your attorneys to inform me when I may have *my clients* ready for the purpose of closing this deal." It is to be noted that the letter makes no mention of any assignment, certainly not of one to him; "my clients" might well have referred to the Wohles. There was additional testimony implicating Carluccio, which it is unnecessary to detail.

Undoubtedly, the transaction was the joint and co-operative venture of Rosenbaum and Carluccio.

Appellant argues that respondent was not defrauded because it was to receive the agreed price. This contention disregards the testimony that respondent asked for more than $9,000 for the property but was induced to accept that sum on the representation of respondent's broker that that was its value. Even if appellant's contention were true, however, it would not avail as a defense, for on considerations of public policy "the effect of concealment and neglect of duty, such as this, upon the transaction, * * * does not at all depend on the question whether or not the result was injurious to the principal." *Young* v. *Hughes, supra.* The law "does not stop to inquire whether the contract or transaction was fair or unfair. It stops the inquiry when the relation is disclosed, and sets aside the transaction or refuses to enforce it, at the instance of the party whom the fiduciary undertook to represent, without undertaking to deal with the question of abstract justice in the particular case." *Munson* v. *Syracuse G. & C. Railway Co., 103 N. Y. 59; 8 N. E. Rep. 355.*

The decree will be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, BODINE, DONGES, HEHER, COLIE, WACHENFELD, EASTWOOD, BURLING, WELLS, DILL, FREUND, McLEAN, SCHETTINO, JJ. 13.

*For reversal*—None.