100 N.J. Super. 478 (1968)
242 A.2d 642
W. BRYCE THOMPSON, IV, TRADING AS THOMPSON REALTY CO., PLAINTIFF-APPELLANT,
v.
RAYMOND S. HOAGLAND AND ROXENE HOAGLAND, HUSBAND AND WIFE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 11, 1968.
Decided May 7, 1968.
*480 Before Judges CONFORD, COLLESTER and LABRECQUE.
Mr. Joseph L. Stonaker argued the cause for appellant (Messrs. Baggitt and Stonaker, attorneys).
Mr. Richard A. Koerner argued the cause for respondents (Messrs. Skillman and Koerner, attorneys).
The opinion of the court was delivered by CONFORD, S.J.A.D.
Plaintiff, a real estate broker, appeals from the dismissal by the Law Division at the end of plaintiff's case, in an action tried to the court without a jury, of his complaint for commissions earned in procuring a purchaser for defendants' real estate. Defendants had refused to enter into a contract of sale with the proposed purchaser. The action of the trial court was based upon the alleged failure of plaintiff to inform defendants that the purchaser was an individual with whom plaintiff had a number of joint investments in real estate.
There must be a reversal for the reason that there was some testimony on plaintiff's case which, if believed, would have permitted the court to find that plaintiff made substantial revelation to defendants of his relationship with the purchaser. It is true that under R.R. 4:42-2(b) the trial *481 court was authorized, if it chose to do so, to decide the motion for involuntary dismissal at the end of plaintiff's case on its merits. But its remarks on granting the motion indicate that it was not purporting to find the facts against the plaintiff on the merits, but rather dealing with the motion as though the case were being tried before a jury. The court stated it was viewing the record "in its most favorable terms" to the plaintiff and not weighing the credibility or probative value of plaintiff's proofs but accepting them "all as true." On this approach, as will be demonstrated hereinafter, the plaintiff's proofs required a denial of the motion. Since the case must be retried, however, we will deal with another ground of reversal argued by plaintiff as well as with alternative grounds of affirmance advanced by defendants.
The following facts were developed on plaintiff's case. On June 11, 1963 plaintiff entered into a written, exclusive right-to-sell agreement with defendants for their 76-acre tract of land in Franklin Township for a period of 365 days. Sale was authorized at a price of $65,000, with terms specified. Commission was to be 10% of the sale price. In the agreement plaintiff undertook to advertise, offer and show the property for sale. Advertising was to be for a sale price of $70,000. Plaintiff advertised and showed the property to prospects, but without early success. Six to eight weeks later defendants sought an alteration of the agreement to fix the sale price at $80,000, but plaintiff refused. He did agree, however, to change the asking price to $80,000.
On April 22, 1964 one Dr. Abrams offered plaintiff $60,000, which was refused by defendants. On June 8, 1964 he offered $65,000. Again defendants refused. On or about June 8, 1964 plaintiff tendered defendants for execution Dr. Abrams' signed contract to purchase the property for $65,000, with terms as specified in the sales agreement. Dr. Abrams also deposited a $6,500 earnest-money check with plaintiff. Defendants rejected the contract. There was proof from which it could have been found that defendants at that time were *482 resolved not to sell the property to anyone for $65,000, being satisfied that it was worth more.
As of the time of Dr. Abrams' offers, he and plaintiff jointly held three or four tracts of land which they had purchased for speculative purposes, and they were both stockholders, along with a number of other investors, in an active real estate investment corporation of which they were officers and directors. Plaintiff testified that when he was negotiating the brokerage agreement with defendants he informed them of his purchase with Dr. Abrams of a nearby tract, as the price was relevant to the question of the price to be fixed for the subject property. He gave equivocal testimony as to whether he told defendants about his other land investments with Dr. Abrams at the time the latter submitted his offers, but on cross-examination by the court he testified:
"The Court: So, then, you say you did tell the Hoaglands that Dr. Abrams was interested in the property and that you and he had some prior business relationships or partnership arrangements in properties you had bought in the past?
The Witness [plaintiff]: Right.
The Court: And that he had offered $60,000?
The Witness: That's correct."
We conclude that this testimony created at least a fact issue as to plaintiff's revelation to defendants of his association with Dr. Abrams, calling for controversion by the defense, and that it was therefore error to dismiss, at least in the absence of any purported decision of the factual merits pursuant to R.R. 4:42-2 (b). See supra.
Plaintiff argues that it is immaterial in any event whether he ever informed defendants of his association with Dr. Abrams since the proof is clear that that circumstance was not material to their refusal to sell  they having decided to sell to no one at the figure listed in the agreement. We do not agree. If the failure to apprise defendants of the relationship bore upon a circumstance which could have generated a fair suspicion as to whether plaintiff had *483 exercised his very best efforts as defendants' agent to obtain the best price possible for the property, this constituted an absolute defense to any action for a commission, whether or not defendants were in fact prejudiced by the nondisclosure. For reasons to be indicated, we are satisfied that plaintiff's relationship to Dr. Abrams was of a character requiring full apprisal of defendants thereof and their consent, express or implied, to the submission of an offer by him, in consequence of the fiduciary status of plaintiff toward defendants inherent in the broker-principal relationship.
Only recently the Supreme Court restated the fundamental relationship between broker and principal as follows:
"The broker was and is looked upon as a fiduciary and is required to exercise fidelity, good faith and primary devotion to the interests of his principal. Wilcox v. Reynolds, 169 Okla. 153, 36 p.2d 488 (1934); Haydock v. Stow, 40 N.Y. 363 (1869). He cannot permit his interests to interfere with those of his principal. As the Court of Errors and Appeals said in Young v. Hughes, 32 N.J. Eq. 372, pp. 384-385 (E. & A. 1880), the rule which applies to trustees has been equally applied to the relation between the real estate broker and his principal. He must show perfect good faith and openness of dealing. The rule was not intended to be remedial of actual wrong done alone, but also to be preventive of the possibility of it." (Emphasis ours)
Ellsworth Dobbs, Inc. v. Johnson, 50 N.J. 528, 553 (1967). See also Silverman v. Bresnahan, 35 N.J. Super. 390, 391, 396 (App. Div. 1955); Carluccio v. 607 Hudson St. Holding Co., Inc., 141 N.J. Eq. 449, 453 (E. & A. 1947); Remer v. Fox, 141 N.J. Eq. 430, 431 (Ch. 1948).
It is a corollary of the principle discussed above that failure of the broker to inform the principal that the purchaser he produces is an alter ego of the broker or a relative or partner renders the transaction voidable as between broker and principal at the option of the principal. 12 Am. Jur.2d, Brokers, § 95, pp. 846-47; 12 C.J.S. Brokers, § 42, pp. 102-103. The rule is prophylactic in purpose, and, by the better view, not qualified by the actual bona fides of the broker in the matter or the absence of harm to the *484 principal. See Annotations, 26 A.L.R.2d 1302, 1314 (1952). In this context the principal is entitled to be informed of "any circumstance that might reasonably be expected to influence the complete loyalty of the agent to the interest of his principal." MacGregor v. Florida Real Estate Commission, 99 So.2d 709, 712 (Fla. Sup. Ct. 1958).
We are satisfied that the close and continuing business relationship between plaintiff and Dr. Abrams, amounting in substance, although not with legal technicality, to a partnership in land speculation, was such as to foster a temptation on the part of plaintiff to favor the interests of his associate at the expense of undivided loyalty to defendants in submitting a purchase offer by the former. This brought the case within the spirit of the rule cited above making an undisclosed partner of the broker an impermissible source of an offer of purchase to be submitted to a principal-seller in purported satisfaction of the brokerage undertaking.
In view of the foregoing, if plaintiff failed to make the necessary disclosure it would be inconsequential that defendants refused to accept the offer because they did not desire to sell at the stipulated price to anyone at all.
Defendants' alternative ground for sustaining the judgment in their favor  that they had revoked the brokerage agreement by their letter requesting a change in the selling price from $65,000 to $80,000  is not borne out by the evidence. Plaintiff's testimony was that defendants requested the modification but he refused to accede thereto. Moreover, it is doubtful whether in the case of an "exclusive right" agreement for a fixed period the principal can defeat the broker's right to earn a commission during that period by revoking the authorization. See Rose v. Minis, 41 N.J. Super. 538, 544 (App. Div. 1956).
We are not in agreement with defendants' added argument that the Abrams' offer was not tendered to both defendants within the 365-day period. The proofs would have permitted an affirmative finding by the court on that issue.
Judgment reversed; the cause is remanded for a new trial.