Bryan ANDERSON, d/b/a Anderson Company Realtors, Appellant,

v.

A. J. GRIFFITH et ux., Appellees.

No. 17440.

Court of Civil Appeals of Texas,
Fort Worth.

Oct. 26, 1973.

Rehearing Denied Nov. 30, 1973.

McDonald, Sanders, Ginsburg, Phillips, Maddox & Newkirk, and Atwood McDonald, Fort Worth, for appellant.

Brown, Herman, Scott, Dean & Miles, and William M. Brown, Fort Worth, for appellees.

## OPINION

BREWSTER, Justice.

Plaintiffs, A. J. Griffith and wife, sued Bryan Anderson, a real estate broker, alleging that he breached his fiduciary obligation that he owed to them by virtue of

being their real estate agent in connection with the sale of a 50 acre tract of land that they owned. The land was located in Colleyville, Tarrant County, Texas. Plaintiffs sought in their trial pleading to recover the $12,500.00 commission that they paid to Anderson for his services and to recover the profits that Anderson made for himself out of the transaction. A jury found that Anderson had a prior oral agreement with third persons concerning the sale, which agreement he failed to disclose to plaintiffs and that plaintiffs would not have gone through with their deal with Anderson had they been aware of the terms of such agreement.

On receiving the jury verdict the trial court rendered judgment in plaintiffs' favor and against Anderson for a recovery of the $12,500.00 commission the Griffiths paid Anderson. The judgment also awarded to the Griffiths Anderson's one-third interest in the profits realized when the land that had been purchased from the Griffiths for $5,000.00 an acre on December 2, 1970, was resold for $10,000.00 per acre on September 1, 1971.

This is an appeal by the defendant, Anderson, from that judgment.

We affirm.

The defendant, Anderson, argues his points Nos. 1 through 15, inclusive, and 17 and 20 together. He urges 21 points of error in all. His first four points of error attack the jury's answer to Special Issue No. 1 alleging: (1) that the jury's answer thereto is contrary to the undisputed evidence; (2) that there is no evidence of probative value supporting the jury's answer to it; (3) that the jury's answer is against the overwhelming weight of the evidence; and (4) the evidence is insufficient to support the jury's answer to Issue No. 1.

Anderson's points of error 4 through 8, inclusive, attack the jury's answer to Special Issue No. 2 on the same grounds urged in attacking Issue No. 1 as outlined above.

Points of error Nos. 9 through 12, inclusive, attack the jury's answer to Issue No. 3 on the same identical grounds.

Anderson's point of error No. 13 is that the court erred in failing to sustain his motion for judgment notwithstanding the verdict. In Point 14 he says, in the alternative, that the court erred in not sustaining his motion to set the verdict aside and grant a new trial. Point of error No. 15 is that the undisputed evidence showed plaintiffs were not entitled to the judgment. Point 17 is that the verdict of the jury did not as a matter of law support the award to plaintiff of the $12,500.00 and point of error No. 20 is that the court erred in rendering any judgment of any kind against Anderson.

We overrule all of those points just referred to, same being Anderson's points of error Nos. 1 through 15, inclusive, 17 and 20.

The jury verdict had three issues in it. The jury found in answer to Issue No. 1 that at the time the sales contract dated June 1, 1970, was signed by the Griffiths and Anderson on June 23, 1970, that Anderson already had an oral agreement for the sale of two-thirds interest in the Griffith property to Kelly and Hamm on the terms later reduced to writing in a written contract between Kelly, Hamm and Anderson and signed by them on November 25, 1970.

The jury finding in answer to Issue No. 2 was that the Griffiths would not have entered into the contract dated June 1, 1970, for the sale of their land to Anderson, Trustee, if they had known of the existence and content of this agreement between Anderson, Kelly and Hamm.

The jury finding in answer to Issue No. 3 was that the Griffiths would not have executed and delivered their warranty deed conveying their property to Anderson, individually, and as Trustee, if they had known of the existence and content of the

agreement between Anderson, Kelly and Hamm.

Undisputed facts in the case were: the Griffiths had owned their land since 1935; in May, 1970, the defendant, Anderson, a licensed real estate broker, started negotiating with the Griffiths for the purchase of their land for $250,000.00; a contract dated June 1, 1970, for the sale of the property to Bryan Anderson, Trustee, was prepared by Anderson in which he also named himself as the seller's agent entitled to a commission of 5% of the sales price for negotiating the sale and which commission was to be paid to him upon closing the transaction; and the Griffiths and Anderson on June 23, 1970, all signed this sales contract just referred to.

On November 25, 1970, Anderson, Dee Kelly and Alan Hamm signed a written agreement by the terms of which Kelly and Hamm agreed to furnish all of the $50,000.00 cash down payment to the Griffiths that was required to be made by their sales contract with Anderson, Trustee, and further agreed to advance the money to pay the ad valorem taxes on the Griffith' land for the next three years, and further agreed to advance the annual $14,000.00 interest payments for the next 3 years that would accrue on the $200,000.00 note provided for in the sale contract between the Griffiths and Anderson, Trustee, as a part of the sales price for the land. In return for their doing those things, Anderson therein agreed to convey to Kelly and Hamm two-thirds interest in the property, retaining for himself a one-third interest therein.

■ This written agreement that was signed by defendant, Anderson, and by Kelly and Hamm contained the following provision:

"WHEREAS, at the time said sale contract of June 1, 1970 was entered into it was theretofore agreed by KELLY, HAMM, and ANDERSON that ANDERSON would convey one-third interest to

KELLY and one-third interest to HAMM on the terms and conditions set forth in this agreement . . . ."

The June 1, 1970, sale contract referred to in this recital was the one between the Griffiths and Anderson, as Trustee.

Since Anderson signed the agreement containing this recital it was admissible against him as an admission against interest. 24 Tex.Jur.2d 166, Evidence, Sec. 613.

During the trial Anderson testified that the recital of fact just referred to was incorrect and that he, Kelly and Hamm actually did not make their deal until sometime after he and the Griffiths had signed their sales contract on June 23, 1970.

■ Thus, an issue of fact was created as to whether or not the Kelly, Hamm, and Anderson agreement was made orally before Anderson and the Griffiths executed on June 23, 1970, the sales contract dated June 1, 1970.

The jury by its answer to Issue No. 1 resolved this fact issue against Anderson and established as a fact in this case that at the time the sales contract between the Griffiths and Anderson was signed on June 23, 1970, Anderson had already made an oral agreement with Kelly and Hamm for a sale of a two-thirds interest in the property to them on the terms later reduced to writing and contained in their November 25, 1970, contract, which agreement also provided for Anderson to retain for himself one-third of the property.

It was undisputed also that on December 2, 1970, the parties gathered at a title company office to close the deals. At that time the Griffiths deeded to Bryan Anderson, Trustee, their tract of almost 50 acres. Kelly and Hamm furnished the $50,000.00 that was on the occasion used as a down payment to the Griffiths. Out of this part of the purchase price the Griffiths paid to the defendant, Anderson, a commission of $12,500.00 for his services in representing them as a real estate broker in the transac-

tion. Bryan Anderson, individually and as Trustee, executed a $200,000.00 note payable to the Griffiths for the balance of the purchase price. On this same occasion Bryan Anderson, individually and as Trustee, did then execute and deliver a warranty deed conveying to Kelly and Hamm, in equal shares, a two-thirds interest in the Griffith' tract.

It was undisputed that Anderson did not at any time prior to or during the closing of these transactions tell the Griffiths or their attorney of the agreement or its contents that he had had all along with Kelly and Hamm with reference to this land. The Griffiths did not find out the terms of the agreement until later.

It is also undisputed that thereafter on September 2, 1971, Anderson, Kelly, Hamm and J. B. Sandlin (who had acquired one-half of Hamm's interest) sold and conveyed this Griffith tract, for which Griffith was paid $5,000.00 an acre, to one Gary Kirkland for a price of $10,000.00 per acre.

The $200,000.00 note that the Griffiths were given as a part of the purchase price has been paid in full.

This suit by the Griffiths against Anderson was first filed March 8, 1971. At that time Anderson still held title to one-third of the land and plaintiffs sought to impress a constructive trust in their favor on Anderson's one-third interest. When the contract of sale by Anderson, Kelly, Hamm and Sandlin to Gary Kirkland was obtained in September, 1971, the Griffiths disclaimed any interest in the land and agreed to look only to Anderson's interest in the proceeds of that sale for the satisfaction of any judgment that they might get in this case. This was done so that the sale could be closed. Plaintiffs' petition was then amended to seek to recover the commission and to impress a constructive trust in their favor on the profits made from the sale by Anderson.

The profit that Anderson realized from the transaction, besides the $12,500.00 commission he was paid, is the one-third interest that he owns in a note for $196,640.00 dated September 2, 1971, and bearing interest at 7½ per cent per annum. This note is executed by Gary Kirkland payable to Anderson, Kelly, Hamm and Sandlin.

The written sales contract between the Griffiths and Anderson contained the following provision: "6. Commission of 5% of sales price shall be paid by Seller to the undersigned agent for services as a real estate broker and shall be due when this sale has been completed . . . ."

The agreement was signed Anderson Company Realtors, Bryan Anderson, Trustee, agent for seller. It was also signed "Bryan Anderson, Trustee," purchaser, in another place.

Paragraph 5 of Plaintiffs' Exhibit No. 7, which was the November 25, 1970, written agreement that was signed by Anderson, Kelly and Hamm is as follows: "It is understood that ANDERSON will be entitled to a real estate commission from the sellers upon closing of the purchase from A. J. Griffith and Dorothy B. Griffith, and ANDERSON will not be obligated to share such commission with KELLY and HAMM."

The undisputed facts in this case establish as a matter of law that Bryan Anderson acted as real estate broker for the sellers and as the seller's agent in connection with the sale of the land by the Griffiths to Bryan Anderson, Trustee, and that when the sale was closed the Griffiths paid Anderson $12,500.00 as a commission for so serving as their agent.

■ Since Anderson was serving in connection with the transaction as the agent or broker of the Griffiths he owed to them, by virtue of such relationship, the duty under the law to inform them of the profits he was arranging for his own private account in dealing with their property.

The legal principles involved are stated in 2 Tex.Jur.2d 557, Agency, Sec. 111, as follows:

"The relationship existing between a principal and his agent is fiduciary in nature. It requires loyalty and good faith, integrity of the strictest kind, and fair and honest dealing by the agent toward the principal. In this connection, it is said that one who occupies such a fiduciary relationship to another must measure his conduct by high equitable standards and not by the standards commonly required in business dealings between ordinary persons. *Consequently, an agent has the duty of imparting to his principal every material fact relating to transactions within the scope of the agency on becoming aware of such facts during the course of the transaction.* Good faith, honesty, and fair dealing should always prevail in any transaction in which one person is acting as the agent of another, and there should never be any concealment of matters that might tend to influence the agent's actions, to the prejudice of his principal.

"In every agency relationship, the principal is entitled to the unbiased judgment and best efforts of the agent. Furthermore, for obvious reasons founded on public policy, an agent may not assume any relation that is antagonistic to the duties owed by him to his principal. For example, *an agent may not act in behalf of another whose interest is adverse to that of the principal, or act in a double capacity or for two or more principals, unless all of the principals consent to such representation with full knowledge of the facts.* Again, an agent may not deal with the subject matter of the agency in such a manner as to injure the principal, or act in connection with the subject matter so as to secure for himself secret or unauthorized benefits. . . . " (Emphasis ours.)

The Court, in Allison v. Harrison, 156 Tex. 582, 156 S.W.2d 137 (Com.App., 1941), held that the principles just referred to apply in a real estate transaction such as that involved here. The Court also said at page 140: "It is also settled that *an agent in dealing with a principal on his own account owes it to the principal* not only to make no misstatements concerning the subject matter of the transaction, but also *to disclose to him fully and completely all material facts known to the agent which might affect the principal; and that unless this duty on the part of the agent has been met, the principal cannot be held to have ratified the transaction.* Id., supra [Shannon v. Marmaduke, 14 Tex. 217]. Texas Jurisprudence (Vol. 2, p. 594, sec. 182), citing in support of its statement the Marmaduke case, supra, and other cases, says: 'For example, if an agent for the sale of his principal's property should buy it himself, either directly or through the instrumentality of a third person, the purchase is voidable at the option of the principal; the transaction will be set aside, even if the agent proves that the price is fair and reasonable and that there is no element of undue advantage; *nothing will defeat the principal's remedy except his own confirmation after full knowledge.'* . . .

"It is unnecessary to refer in detail to other concealments. It is sufficient to point out that at the time of the sale to Harrison he and Campbell had deals for the sale of royalty pending for more than enough to pay for the land, and that the transaction whereby Harrison purchased the land, and that whereby he sold a part of the royalty thereby acquired, were closed simultaneously. The proceeds of the checks for the royalty sales were the same that paid Allison for the land, and were in excess of such amount, and were payable to Campbell and Harrison jointly." (Emphasis ours.)

■ It is the legal obligation of one serving as a real estate broker to make a full, fair and prompt disclosure to his employer of all facts that come to his knowledge that are or may be material or which might affect his principal's right and interest or influence the action that he takes.

See Restatement of the Law of Agency, Section 390.

The existence of this agreement between Anderson, Kelly and Hamm, which they reduced to writing on November 25, 1970, tended to indicate that the deal Anderson had obtained from the Griffiths was so good that persons knowledgable of real estate prices in the area where this land was located, as were Hamm and Kelly, were willing, in exchange for only a two-thirds interest in the deal, to advance the $50,000.00 in cash for Anderson to make the down payment to the Griffiths, $14,000.00 in cash for three straight years to pay the interest on the note, and to pay the taxes on the land for three years. Out of the transaction Anderson was to get practically a free ride for a period of three years and was to keep a one-third interest in the land.

■ Applying the rules announced above to the facts of this case, it was the duty of Anderson to inform the Griffiths that Kelly and Hamm had agreed to advance to him the $50,000.00 required to make the down payment on the land, and had agreed to advance the money needed to pay three years' taxes and the interest on the $200,000.00 note for three years in exchange for his conveyance to them of a two-thirds interest in the property.

We hold that when Anderson failed to inform the Griffiths of this arrangement that he had with Kelly and Hamm he breached the duty that he owed to his principals, the Griffiths.

Other cases supporting our holding here are Hahl v. Kellogg, 42 Tex.Civ.App. 636, 94 S.W. 389 and Burleson v. Earnest, 153 S.W.2d 869 (Amarillo Civ.App., 1941, writ ref., w. o. m.). In this last cited case in speaking of the questions that are before this Court, that court said at page 874 the following:

"The question, therefore, does not relate to the mala fides of the agent nor to whether or not a greater sum might have been procured for the property, nor even to whether or not the vendor received full value therefor. The self-interest of the agent is considered a vice which renders the transaction voidable at the election of the principal without looking into the matter further than to ascertain that the interest of the agent exists. Nabours v. McCord, 100 Tex. 456, 100 S.W. 1152, Hume v. Baggett & Baggett, Tex.Civ.App., 221 S.W. 1002."

■ We hold that the evidence in this case was clearly sufficient to raise the fact issues that the court submitted to the jury in special issues Nos. 2 and 3 and to support the jury's answers thereto. Issue No. 2 asked whether the Griffiths would have entered into their sales contract with Anderson had they known of the existence and content of his agreement with Kelly and Hamm, and Issue No. 3 asked whether the Griffiths would have executed the deed conveying the land to Anderson if they had had knowledge of such agreement and its contents. Plaintiffs testified that they would not have signed the sales contract and the deed had they known of the agreement or its contents. See Allison v. Harrison, supra (discussion under Syllabus 3).

Anderson's point of error No. 16 is that the jury verdict does not support the part of the judgment awarding plaintiffs a one-third interest in the $196,640.00 note signed by Kirkland.

His 18th point of error is that since no issues in the charge pertain to the resale of the land to Kirkland the part of the judgment giving plaintiffs a one-third interest in the $196,640.00 note has no support in the verdict.

His 19th point urges that there is no evidence of probative value supporting the part of the judgment giving one-third of the note to the plaintiffs.

His 20th point of error is that the court erred in rendering any judgment of any kind against Anderson.

We overrule each of those points.

It is the law that when an agent breaches his fiduciary obligation to his principal, he forfeits all compensation for his services as agent, and he must also account to his principal for every profit, benefit or advantage that he received out of the transaction.

The following is from Kinzbach Tool Co., Inc. v. Corbett-Wallace Corporation, 138 Tex. 565, 160 S.W.2d 509 (1942):

" . . . A fiduciary cannot say to the one to whom he bears such relationship: You have sustained no loss by my misconduct in receiving a commission from a party opposite to you, and therefore you are without remedy. It would be a dangerous precedent for us to say that unless some affirmative loss can be shown, the person who has violated his fiduciary relationship with another may hold on to any secret gain or benefit he may have thereby acquired. It is the law that in such instances if the fiduciary 'takes any gift, gratuity, or benefit in violation of his duty, or acquires any interest adverse to his principal, without a full disclosure, it is a betrayal of his trust and a breach of confidence, and he must account to his principal for all he has received.' United States v. Carter, 217 U. S. 286, 30 S.Ct. 515, 520, 54 L.Ed. 769, 775, 19 Ann.Cas. 594. See also Ash v. A. B. Frank Co., Tex.Civ.App., 142 S.W. 42; Armstrong v. O'Brien, 83 Tex. 635, 19 S. W. 268."

The case of Stein v. Sims, 283 S.W. 319 (Amarillo Civ.App., 1926, no writ hist.) also supports the holding we make here.

Because of Anderson's breach of the fiduciary obligations owed to the Griffiths he is not entitled to retain the $12,500.00 commission that they paid to him for his services to them as their real estate agent, and he must turn back to them all the profit that he realized with respect to the land involved.

The trial court's judgment was not incorrect in the respects complained of.

The evidence in the case established as a matter of law that Anderson was the plaintiffs' broker in the transaction in which they sold their land. Anderson admitted in his testimony that he did not disclose to the Griffiths or to their attorney the fact that he had an agreement with Kelly and Hamm and that he did not disclose to them the contents of such agreement. The evidence is undisputed to the effect that the Griffiths paid to Anderson the $12,500.00 for his services as their broker and that his profit in the transaction when he turned around and sold his one-third interest in the land to Kirkland was a one-third interest in the note that Kirkland executed on which there was a balance owed at trial time of $196,640.00. No elements of plaintiffs' cause of action against Anderson were in dispute except the issues that were actually submitted by the trial court to the jury. The judgment rendered was in all respects fully supported by the jury verdict and the undisputed evidence in the case.

Anderson's 21st point of error is that the court erred in failing to grant a new trial on the grounds of newly discovered evidence. We overrule this point.

The record on appeal does not show that Anderson offered any evidence of any kind at the hearing of his amended motion for new trial. It was necessary that he do so in order to claim error in overruling such motion.

In Jacobi v. Texas State Board of Medical Examiners, 308 S.W.2d 261 (Waco Civ.App., 1957, ref., n. r. e.), the court said at page 265: "We think the law is well established that in order to require the granting of a new trial on the ground of newly discovered evidence, the following indispensable elements must be present, viz.: (1) admissible, competent evidence must be introduced on the hearing of the motion for new trial showing the existence of the newly discovered evidence relied upon, (2) the party seeking a new trial must show that he had no notice of the existence of such evidence prior to the time

of trial, (3) that due diligence had been used to procure the evidence prior to trial, (4) that the evidence is not merely cumulative to that already given and does not tend only to impeach the testimony of the adversary, and (5) the evidence would probably produce a different result if a new trial were granted. Hayman v. Dowda, Tex.Civ.App., 233 S.W.2d 466; Texas Employers Ins. Ass'n v. Moser, Tex.Civ.App., 152 S.W.2d 390; Employees Lloyds v. Schott, Tex.Civ.App., 183 S.W.2d 262 (er. ref.); Snow v. Harding, Tex.Civ.App., 180 S.W.2d 965 (er. ref. w. o. m.); Gowan v. Reimers, Tex.Civ.App., 220 S.W.2d 331 (er. ref. n. r. e.); Vance v. Batterton, Tex.Civ.App., 187 S.W.2d 247 (er. ref. w. o. m.). We do not find any of the foregoing indispensable elements present in the case here under consideration."

See also to same effect McDonald Texas Civil Practice, Vol. 4, Sec. 18.16.1 wherein it is also brought out that motions for new trial on this ground are not favored by the courts.

At the trial Anderson testified that the agreement between him, Kelly and Hamm had not been made at the time he and the Griffiths signed the sales contract on June 23, 1970. He testified that he did not meet Kelly until later.

The newly discovered evidence, as reflected by the affidavits attached to the motion for new trial, tends to be cumulative of Anderson's testimony on this issue.

■ The question as to whether or not at the hearing of the motion for new trial the applicant has proved up all of the necessary elements as outlined in the Jacobi case, supra, to establish his right to a new trial on the grounds of newly discovered evidence are matters that lie within the sound discretion of the trial court and his discretion will not be disturbed on appeal unless he abused it. See Texas Employers' Ins. Ass'n v. Evers, 242 S.W.2d 906 (Amarillo Civ.App., 1951, ref., n. r. e.).

We hold that the record does not show that the trial court abused its discretion in overruling Anderson's motion for new trial based on the grounds of newly discovered evidence.

In his transaction with the Griffiths Anderson could have, if he had seen fit to do so, simply occupied the position of being the buyer of the property, either in his individual capacity, or as Trustee for the buyers, or in both such capacities. He did not see fit to do that, however. He elected to hire out to the Griffiths to act in the transaction in the additional capacity of being their agent or real estate broker, and to charge the Griffiths a rather substantial fee for his services as their agent. It was by virtue of him electing to and assuming the role of agent or real estate broker for the Griffiths that the fiduciary relationship between him and the Griffiths arose. And it was by virtue of his breach of the duties that he owed to his principals, the Griffiths, as their agent and broker that the Griffiths became legally entitled to the judgment that they were awarded by the trial court.

The following out-of-state cases make the same holding that we have made in this case: Iriart v. Johnson, 75 N.M. 745, 411 P.2d 226 (1965); Thompson v. Hoagland, 100 N.J.Super. 478, 242 A.2d 642 (1968); Sylvester v. Beck, 406 Pa. 607, 178 A.2d 755 (1962); Gammage v. Turner, 206 So.2d 252 (Fla.App., 1967); and Pittsburgh Equitable Meter Co. v. Paul C. Loeber & Co., 160 F.2d 721 (7 Cir., 1947).

All of defendant's points of error are overruled.

The judgment is affirmed.