STEIN v. SIMS et al. (No. 2649.)

(Court of Civil Appeals of Texas. Amarillo. April 7, 1926. Rehearing Denied April 28, 1926.)

1. Principal and agent ⬤⟶78(6)—Facts held to show plaintiff's agent in negotiating loan fraudulently procured shares of stock by falsely representing that lender required them as a bonus.

In action to recover shares of stock and dividends from agent, evidence held to show that agent employed to negotiate a loan, though not required to give shares to lender, falsely represented that lender required them as a bonus and kept them for himself.

2. Principal and agent ⬤⟶69(3)—Agent was not entitled to retain shares of stock and dividends thereon, secured from borrower on fraudulent representation that lender required them as a bonus.

Where agent, in negotiating loan, fraudulently procured shares of stock on false representation that lender required them as a bonus, borrowers were entitled to recover dividends paid him and to cancellation of certificates of stock held by him, since agent, acting in bad faith, can retain neither secret profits nor compensation.

Appeal from District Court, Wichita County; H. R. Wilson, Judge.

Action by Mrs. E. M. Sims and husband against F. L. Stein. Judgment for plaintiffs, and defendant appeals. Affirmed.

Weeks, Morrow, Francis & Hankerson, of Wichita Falls, for appellant.

Bullington, Boone & Humphrey and Wilson & Williams, all of Wichita Falls, for appellees.

HALL, C. J. The appellees, M. H. Sims and wife, sued the appellant, F. L. Stein, who is alleged to be a citizen of Ohio, in the district court of Wichita county.

The substance of the first amended original petition is that on the 25th day of February, 1922, Mrs. Sims, through her husband, employed the defendant, Stein, to secure a loan of $30,000 for her, and for his services agreed to give him 5,000 units or shares

of stock in what is known as the Owens Royalty Trust, a joint-stock association, engaged in holding in trust oil royalties and oil interests, with the State Trust Company of Wichita Falls as sole trustee; that Stein represented that he could place the certificates of stock with a money lender, whose name is unknown to plaintiff, provided plaintiff would give a bonus of 30,000 shares of said stock; that she sent him seven certificates, indorsed in blank, representing 5,000 shares each, one of the certificates to pay Stein for his services; that the husband of plaintiff, Mrs. Sims, did not execute the transfer of the shares of stock to Stein, as required by the laws of Texas, V. S. C. S. art. 4621; that the money was borrowed from a Mrs. Kunzman, who did not demand or receive the 30,000 shares, but that the same were appropriated by the defendant, Stein, who had frauduently represented that they were demanded by the lender, Mrs. Kunzman.

Plaintiff further alleges that $900 in dividends had been paid to Stein on said shares of stock. This amendment was filed Decemmer 1, 1923. The original petition is not in the transcript. She prays for the recovery of the $900 in dividends. She further prays that the transfer of the 30,000 shares of stock be canceled.

December 3, 1923, Stein answered plaintiff's original petition by a general demurrer and a general denial, but filed no further pleading.

H. C. Weeks, as amicus curiæ, filed a plea, alleging that, after Stein had entered his appearance as a defendant, and filed his answer to the original petition, plaintiff filed her first amended original petition asking judgment against Stein in the sum of $900; that thereafter, on December 4, 1923, plaintiff caused a copy of said first amended original petition to be served on defendant at his home in Franklin county, Ohio; that thereafter, on June 14, 1924, plaintiff filed her second amended original petition, wherein she asks judgment for several thousand dollars as usurious interest, and $2,500 exemplary damages not claimed in her original and first amended original petitions. He further alleges that Stein is a nonresident of the state of Texas, and was on the 30th day of October, 1923, and at all times subsequent and prior thereto; that a new cause of action is asserted from that declared upon in the original petition, by reason of which facts the court is without jurisdiction of the defendant, Stein, to enter a personal judgment against him based on any cause of action other than that set forth in the original petition. The court sustained the plea filed by the amicus curiæ, Weeks, and ordered plaintiff's second amended original petition stricken from the record.

The case was submitted to a jury upon the following special issues:

"No. 1. At the time of the transfer of certificates of Owens Royalty Trust, were such certificates the separate property of Mrs. E. M. Sims? Answer: Yes.

"No. 2. Did the defendant agree to receive as full compensation for his services 5,000 units should he secure a loan of $30,000 for plaintiff? Answer: Yes.

"No. 3. Did the defendant, Stein, have to give any person 30,000 units of Owens Royalty Trust in connection with the loan of $30,000 for the plaintiff? Answer: No.

"No. 4. Did the defendant, Stein, represent to plaintiff or her agents that it was necessary for him to give 30,000 units of Owens Royalty Trust to other parties in connection with the loan of $30,000 for the plaintiff? Answer: Yes.

"No. 5. In the transactions between the Simses and Stein, was it material to the Simses who should get the 30,000 units by Owens Royalty Trust, provided the $30,000 should be forthcoming? Answer: No."

Other issues were submitted at the request of the defendant, which the jury failed to answer.

The trial resulted in a judgment in favor of plaintiffs for the sum of $900, with interest at 6 per cent., and it was further decreed that the certificates of stock to the extent of 30,000 then in the hands of the trustee, together with the dividends, were the property of Mrs. Sims, and the court decreed the cancellation of the certificates held by Stein.

Plaintiffs sought recovery upon two distinct grounds, viz.: First, that the shares of stock which were transferred to the defendant, Stein, were the separate property of Mrs. Sims, and, because her husband did not join her in such transfer, the attempted assignment was void under the statute, and Stein acquired no title to the 30,000 shares; second, because Stein was her agent to negotiate a loan of $50,000, and by reason of his fraud in representing that the lender would require 30,000 shares when no such requirement was shown, that he had fraudulently obtained said shares by way of secret profit, and, because of his disloyalty in representing her, she was entitled to recover both the shares of stock and the dividends which had been paid to Stein.

Having arrived at the conclusion that the judgment should be sustained upon the ground of fraud, we will discuss only that phase of the case.

On the 18th of February, 1922, Sims, with his wife's consent, wrote Miss Mary Beatty at Columbus, giving her a glowing account of the wonderful profits which might be realized in a purchase from the owners of the royalty due them upon the Owens property, in which he states that $30,000 will be needed to finance the enterprise. Accompanying this letter was a prospectus, which was not introduced in evidence, but in the letter it is suggested that Miss Beatty would lay the proposition before Stein, president of a bank at

Columbus, and that there is an opportunity "for the boys at the Ohio National Bank" to make a nice profit without risk or much effort. He explains that he cannot buy the royalty until the $30,000 is in sight or can be depended on, and prefers to finance .it through Ohio parties, because an attempt to do so at Wichita Falls might result in such parties going around him and in his spilling the beans.

Miss Beatty says she took the proposition up with defendant, Stein, and, as submitted, it was that Sims would give some one who would advance the $30,000 some units in the Owens Royalty Trust; that the proposition was that the party who made the loan was to receive the 30,000 units, the interest on the loan to be 8 per cent.

On February 23d, after receipt of the letter, Miss Beatty wired Sims at Wichita Falls as follows:

"Saw Stein who is in position to recommend and can positively put the proposition over. Insists upon having a commission for placing the matter. Customer will want 30,000 units, leaving nothing for Stein. If terms can be made with Stein, I will guarantee the funds at any time."

On February 24th, Sims replied to that telegram as follows:

"Will not change proposition as a business proposition, but if you think necessary and that 5,000 units would please Stein, tell him you will see that he gets them in a gift way. Will make other party come across strong, much as I dislike to insist upon doing so."

On February 25th Miss Beatty wired Sims as follows:

"Had already made arrangements with Stein before receiving your second telegram. At first he was going to drop matter when I told him you would not change proposition. In order to put deal through, told him you would give him 5,000 units as gift, per your telegram received early this morning. He will put deal through for the units. Advise."

On February 27th Stein wrote Sims as follows:

"Pursuant to telegram by you to Miss Beatty, I have written you per the inclosed accepting your proposition. It is understood, however, that in addition to the collateral security and 8 per cent. on the note, 35,000 units are to be forwarded to me to be used by me for the purpose of arranging this loan. Any amount of the remaining 35,000 I am privileged to retain for my services."

On the same day Miss Beatty wired Sims, as follows:

"Stein writing you today authorizing you to make draft on hm."

The record shows that Stein received the 35,000 units; that he borrowed $30,000 from Mrs. Kunzman for 12 months upon his individual note, providing for the payment of 8 per cent. interest quarterly; and that he

283 S.W.—21

reloaned this money to Mrs. Sims. The testimony of Stein and Mrs. Kunzman both is that she neither demanded nor received any part of the 35,000 units and it appears that Stein never tendered or offered to give her any part of them. According to the telegrams which Sims had received, it is clear that Stein agreed to negotiate a loan for Sims; and that, as a consideration for his services as agent in procuring the loan, he demanded a commission, which was subsequently agreed upon as 5,000 units. The first telegram further represents that the party from whom he is to negotiate the loan insists upon having 30,000 units as a bonus. This statement is shown to be absolutely false because, as subsequently shown, Stein agreed to negotiate the loan and accept 5,000 units as his compensation.

On July 27th Stein wrote Sims with reference to the receipt of certain dividends and the failure to receive other dividends, in which he says:

"Will you please send me your check for $250.00 to cover. It is necessary that I advance this sum to the parties holding them, as I had stated that the dividend would be paid about July 1st."

At this time plaintiffs did not know that Stein had appropriated the 35,000 units, and the above quotation from his letter shows that he was still deceiving them and holding out the idea that the lender was calling for the dividends, clearly conveying the idea that the money had been borrowed from a third party.

Sims testified that he did not know that Stein had made the loan himself and appropriated the entire .35,000 units to his own use and benefit until about the time of the maturity of the note.

[1, 2] The evidence is sufficient to sustain the second, third, and fourth findings of the jury. In fact, a careful review of the correspondence between the parties by letter and telegram conclusively establishes the allegation of fraud. An agent stands in the capacity of fiduciary to his principal, and the rule of utmost good faith requires loyalty upon his part to his employer. It is his duty to make known all matters affecting transactions which may be of importance to his principal. He must not speculate in the subject-matter of his agency, nor make any secret profits.

"It is well settled that the agent is bound to exercise the utmost good faith in his dealings with his principal. As Lord Cairns said, this rule 'is not a technical or arbitrary rule. It is a rule founded on the highest and truest principles of morality.' * * * If the agent does not conduct himself with entire fidelity towards his principal, but is guilty of taking a secret profit or commission in regard to the matter in which he is employed, he loses his right to compensation on the ground that he has taken a position wholly inconsistent with that of agent for his employer, and which gives his employer, upon discovering it, the right to

treat him so far as compensation, at least, is concerned, as if no agency had existed. This may operate to give to the principal the benefit of valuable services rendered by the agent, but the agent has only himself to blame for that result." Little v. Phipps, 94 N. E. 260, 261, 208 Mass. 331, 333, 34 L. R. A. (N. S.) 1046–1049.

The rights of the parties are clearly announced in 2 C. J. 693, 698, as follows:

"As a general rule, it is a breach of good faith and loyalty to his principal for an agent, while the agency exists, so to deal with the subject-matter thereof, * * * as to make a profit out of it for himself in excess of his lawful compensation, and, if he does so, he may be held as a trustee, and may be compelled to account to his principal for all profits, advantages, rights, or benefits acquired by him in such dealings, whether in performance or in violation of his duties, and be required to transfer them to his principal upon being reimbursed for his expenses for the same, unless the principal has consented to or ratified the transaction, knowing that benefit or profit would accrue or had accrued to the agent. * * * The application of this rule is not affected by the fact that the principal did not suffer any injury by reason of the agent's dealings, or that he in fact obtained better results."

2 C. J. 700, further declares:

"The agent may also be compelled to account for any secret commissions or any private collateral benefits which he receives for himself in contracting for his principal."

In 2 C. J. 760, it is said:

"As a general rule, an agent who is guilty of fraud upon his principal in the transaction of his agency, is not entitled to compensation for his services. Thus, he generally forfeits compensation where he is guilty of misrepresentation, concealment or nondisclosure with reference to facts material to the subject-matter of the agency; and a contract to pay a fixed compensation may likewise be invalidated by the agent's nondisclosive material facts. So, if an agent in transacting the agency, is guilty of unfaithfulness, treachery or dishonesty, * * * generally forfeits his right to compensation."

See, also, 2 C. J. 765; 9 C. J. 536, 537; Id. 566, 567, 570; Mechem on Agency, §§ 1588, 1589; 2 Labatt's Master and Servant (2d Ed.) § 696.

Our Texas reports are replete with cases which declare the rule to be as stated above, and in which it has been held that the agent not only forfeits all compensation for his services, but that his principal, upon discovery of fraud, may recover the secret profits and compensation paid to him. Hahl v. Kellogg, 94 S. W. 389, 42 Tex. Civ. App. 636; O. E. Sears Land Co. v. Barton (Tex. Civ. App.) 227 S. W. 237; Paul v. Prince (Tex. Civ. App.) 228 S. W. 1102; Eidson v. Saxon (Tex. Civ. App.) 30 S. W. 957.

Having taken this view of the case, and concluded that plaintiffs are entitled to recover upon the grounds of fraud, it becomes unnecessary to discuss the other ground of action based upon the alleged insufficient transfer of the certificates. For the same reason the failure of the jury to answer the special interrogatories becomes immaterial.

The appellees have presented cross-assignments of error with reference to their right to recover usury and damages under the allegations in their second amended original petition, which was stricken by the court upon the exceptions of the amicus curiæ, and under which they might have been entitled to a recovery. Since they request a consideration of the cross-assignments, only in the event the judgment is not affirmed, we will not discuss the issues presented therein.

For the reasons stated, the judgment is affirmed.