OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



September 14, 2001

The Honorable Tim Curry
Tarrant County Criminal District Attorney
1025 South Jennings, Suite 300
Fort Worth, Texas 76104

Opinion No. JC-0407

Re: Whether a hospital district board of managers may appoint its own members to the board of a health maintenance organization created by the district and whether the health maintenance organization's board of directors is subject to the Open Meetings Act (RQ-0362-JC)

Dear Mr. Curry:

On behalf of the Tarrant County Hospital District (the "Hospital District" or "District"), you ask whether the District's board of managers may appoint its own members to the board of a health maintenance organization ("HMO") created by the District and whether the HMO's board of directors is subject to the Open Meetings Act.[1]

We conclude that the District board of managers may appoint its own members to the board of the HMO, but that members of the board of managers who also serve on the HMO board must comply with chapter 171 of the Local Government Code whenever participating in a District vote or decision affecting the HMO. Furthermore, in participating in HMO matters involving the interests of both entities, HMO board members who are also members of the District's board of managers must faithfully carry out their duty to the HMO, consulting and complying with the standards and requirements of the Texas Non-Profit Corporation Act.

We also conclude that although the HMO board is not a governmental body subject to the Open Meetings Act, the group of District board of managers members who serve on the HMO board may constitute a governmental body in and of itself if the board of managers has delegated to the group any authority over District business or rubber-stamps the group's recommendations regarding District business. In that case, meetings of the HMO board at which the board of managers members consider Hospital District business within that group's control will be subject to the Open Meetings Act.

---

[1]Letter from Honorable Tim Curry, Tarrant County Criminal District Attorney, to Honorable John Cornyn, Texas Attorney General (Mar. 2, 2001) (on file with Opinion Committee) [hereinafter Request Letter].

Before addressing your questions, we briefly review the facts presented in your letter. The District is governed by article XI, section 4 of the Texas Constitution and chapter 281 of the Health and Safety Code. You inform us that the District's board of managers has eleven members, all of whom are appointed by the Tarrant County Commissioners Court,[2] as provided by section 281.021 of the Health and Safety Code. *See* TEX. HEALTH & SAFETY CODE ANN. § 281.021(b) (Vernon 2001) ("The commissioners court of a county with a population of more than 650,000 but less than 1.18 million in which a district is created under this chapter shall appoint a board composed of not less than five or more than 15 members."). As authorized by section 281.0515 of the Health and Safety Code, the District has established a health maintenance organization, MetroWest Health Plan ("MetroWest"), under chapter 20A of the Insurance Code. *See id.* § 281.0515 ("A district may establish a health maintenance organization in accordance with the Texas Health Maintenance Organization Act (chapter 20A, Vernon's Texas Insurance Code) to provide or arrange for health care services for the residents of the district.").

You inform us that the District established MetroWest in 1997 as a non-profit taxable corporation under the Texas Non-Profit Corporation Act, TEX. REV. CIV. STATS. ANN. arts. 1396-1.01 - 11.01 (Vernon 1997 & Supp. 2001), to serve as a health-care-delivery system that would enable the District to participate in the State's Medicaid STAR program. *See* Request Letter, *supra* note 1, at 2. The Texas Department of Insurance issued MetroWest a certificate of authority in 1997. *See id.* District funds establish the necessary reserves for MetroWest to qualify as an HMO. *See id.* Upon the dissolution of the HMO, its assets would be distributed to the District. *See id.*

In 1999, MetroWest amended its articles of incorporation to qualify as a tax-exempt entity under section 501(c)(4) of the Internal Revenue Code of 1986. *See id.* The District board of managers recently adopted a resolution recognizing MetroWest as a charitable organization under section 281.0565 of the Health and Safety Code, *see id.* at 4, which authorizes a hospital district to create a charitable organization "to facilitate the management of a district health care program by providing or arranging health care services, developing resources for health care services, or providing ancillary support services for the district." TEX. HEALTH & SAFETY CODE ANN. § 281.0565(b) (Vernon 2001). A charitable organization created by a district under this provision "is a unit of local government for purposes of Chapter 101, Civil Practice and Remedies Code." *Id.* § 281.0565(c).

We understand that MetroWest's amended bylaws provide that the District is the sole member of MetroWest and that the MetroWest board members are elected by the District's board of managers, which may also remove such members with or without cause. *See* Request Letter, *supra* note 1, at 3. The bylaws require meetings of the HMO board to be conducted in accordance with the Open Meetings Act. *See id.*

MetroWest has contracted with the State of Texas to "arrange for managed health care services for Medicaid beneficiaries" in the District. *See id.* at 4. MetroWest and the Hospital

---

[2]Request Letter, *supra* note 1, at 1.

District have entered into a contract "whereby the District is compensated for providing MetroWest with administrative personnel and services, office space, equipment and supplies." *Id.* In addition, MetroWest has an arrangement with the District to provide health-care services to enrollees and to provide administrative services for the District's employee health plan. *See id.*

Three former members of the District's board of managers currently serve on the MetroWest board of directors. The board of managers is contemplating appointing three of its eleven members to the MetroWest board of directors. Telephone Conversations with Sullivan H. Bradley, Jr., Assistant District Attorney for Tarrant County Hospital District (June 21-22, 2001). The MetroWest board of directors has five members. *Id.* In addition, MetroWest is contemplating amending its articles of incorporation and bylaws to omit the requirement that the MetroWest board of directors conduct its meetings under the Open Meetings Act.

In light of the foregoing facts, you ask whether the Hospital District board of managers may appoint some of its current members to the MetroWest board of directors and whether the MetroWest board of directors is subject to the Open Meetings Act. Request Letter, *supra* note 1, at 4. As you point out, the provisions specifically governing the Hospital District and the HMO — chapter 281 of the Health and Safety Code, the Texas Non-Profit Corporation Act, and chapter 20A of the Insurance Code — do not resolve these questions.

You express concern that Hospital District board of managers members may be precluded from serving on the MetroWest board of directors by article XVI, section 40 of the Texas Constitution, which prohibits dual office-holding, providing that "[n]o person shall hold or exercise at the same time, more than one civil office of emolument." TEX. CONST. art. XVI, § 40. As the members of the District's board of managers serve without compensation, *see* TEX. HEALTH & SAFETY CODE ANN. § 281.024 (Vernon 2001) ("A board member serves without compensation"), they do not to hold civil offices "of emolument" within the meaning of article XVI, section 40, *see* TEX. CONST. art. XVI, § 40; *see also Irwin v. State*, 177 S.W.2d 970, 973 (Tex. Crim. App. 1944) (an "emolument" for purposes of article XVI, section 40, is "any pecuniary profit, gain, or advantage"); Tex. Att'y Gen. Op. No. DM-55 (1991) (term "emolument" does not include the legitimate reimbursement of expenses), and that constitutional prohibition is inapplicable.

You also express concern that Hospital District board of managers members may be precluded from serving on the MetroWest board of directors by the common-law doctrine of incompatibility, which is a more difficult question. The doctrine of common-law incompatibility prohibits public officers from holding offices with inconsistent public duties and precludes a body from appointing one of its members to another office. *See generally* Tex. Att'y Gen. Op. No. JC-0225 (2000) ("The common-law doctrine of incompatibility bars one person from holding two offices if their duties conflict, *Thomas v. Abernathy County Line Indep. Sch. Dist.*, 290 S.W. 152 (Tex. Comm'n App. 1927, judgm't adopted) . . . . It also prevents an individual with appointing power from appointing himself to another office or position. *Ehlinger v. Clark*, 8 S.W.2d 666, 674 (Tex. 1928)."). Another strand of the doctrine, not relevant here, prevents a public officer from serving in an employment position that the public officer supervises. *See id.* (common-law doctrine

of incompatibility bars one person from holding "an office and employment if the office has a supervisory role over the employment") (citing Tex. Att'y Gen. LA-75-114). To the extent the doctrine of incompatibility prohibits a public officer from holding offices with inconsistent public duties or from being appointed to another office, it does not apply when one of the two positions is not a public office. *See* Tex. Att'y Gen. Op. Nos. DM-194 (1992) (common-law rule against holding incompatible offices does not apply where one office is not public office); H-1309 (1978) at 1 (concluding that doctrine prohibiting holding of incompatible offices does not apply where one office is not a public office). Thus, whether the doctrine of incompatibility applies here depends upon whether MetroWest's board members are public officers.

Based on the information you have provided, it is difficult for us to assess the legal nature of MetroWest and the status of its board members. On the one hand, MetroWest is a legal entity with an identity separate and apart from the District. As we have noted, the District established MetroWest pursuant to section 281.0515 of the Health and Safety Code, which permits a hospital district to establish a health maintenance organization in accordance with the Texas Health Maintenance Organization Act, chapter 20A of the Texas Insurance Code, "to provide or arrange for health care services for the residents of the district." TEX. HEALTH & SAFETY CODE ANN. § 281.0515 (Vernon 2001). Although the Hospital District is authorized by law to establish an HMO, MetroWest is organized as a nonprofit corporation under the Texas Non-Profit Corporation Act. Its purpose, as we understand it, is not to govern the Hospital District but to provide and arrange for health-care services, particularly to provide a system for the delivery of health-care services under the state Medicaid program.

On the other hand, the HMO is so closely affiliated with the Hospital District that we hesitate to conclude that it is a private entity. A brief we have received suggests that HMOs formed under section 281.0515 are essentially subsidiaries of the creating hospital districts: "the districts remain the parent company and the HMO is the equivalent of a subsidiary." Brief of David W. Hilgers, Hilgers & Watkins, at 2 (May 22, 2001) (on file with Opinion Committee). In this case, the Hospital District is the sole member of the HMO. *See* Request Letter, *supra* note 1, at 2. Furthermore, because the District board of managers appoints the members of the HMO board and may remove them with or without cause, *see id.*, the Hospital District exercises significant control over the HMO board. This control would be even more extensive if three of the HMO's five members were also members of the Hospital District board of managers. As a charitable organization under section 281.0565 of the Health and Safety Code, the HMO "is a unit of local government for purposes of Chapter 101, Civil Practice and Remedies Code." TEX. HEALTH & SAFETY CODE ANN. § 281.0565(c) (Vernon 2001). District funds establish the necessary reserves for MetroWest to qualify as an HMO and MetroWest's assets would revert to the District upon the HMO's dissolution. *See* Request Letter, *supra* note 1, at 2. Given the close relationship between the Hospital District and the HMO and the Hospital District board of manager's ultimate control over the HMO, it appears that the HMO may actually function as an alter ego of the Hospital District.

In determining whether the doctrine of incompatibility applies to the HMOs board members, however, we focus on their authority and duties rather than the legal status and role of the HMO.

This office recently applied the following legal standard to determine whether officers of a nonprofit corporation held public office:

> Public office is the right, authority, and duty created and conferred by law, by which, for a given period, either fixed by law, or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public.

Tex. Att'y Gen. Op. No. JC-345 (citing *Kimbrough v. Barnett*, 55 S.W. 120, 122 (Tex. 1900)); *see also Aldine Indep. Sch. Dist. v. Standley*, 280 S.W.2d 578, 583 (Tex. 1955) (status as an officer as opposed to an employee is determined by "'whether any sovereign function of the government is conferred upon the individual to be exercised by him for the benefit of the public largely independent of the control of others'") (quoting *Dunbar v. Brazoria County*, 224 S.W.2d 738, 740 (Tex. Civ. App.–Galveston 1949, writ ref'd)).

Applying these criteria, we conclude that the HMO's board members are not public officers because their authority and duties are not created and conferred by law. Although a statute authorizes hospital districts to establish HMOs, MetroWest exists not by an act of the legislature but rather due to the act of the Hospital District in establishing it. Moreover, the HMO board members' authority and duties derive not from a statute but rather from the HMO's articles of incorporation and bylaws. We have no information about the actual duties of the HMO board and whether it performs duties that are arguably sovereign functions of the Hospital District. In this regard, we caution that "[n]o governmental agency can, by contract or otherwise, suspend or surrender its functions, nor can it legally enter into any contract which will embarrass or control its legislative powers and duties or which will amount to an abdication thereof." *City of Corpus Christi v. Bayfront Assocs., Ltd.*, 814 S.W.2d 98, 107 (Tex. App.–Corpus Christi 1991, writ denied); *Guerra v. Rodriguez*, 239 S.W.2d 915 (Tex. Civ. App.–San Antonio 1951, no writ); *see also* Tex. Att'y Gen. Op. No. JC-0335 (2001) ("Absent specific constitutional authorization, a city or county may not transfer control of its governmental functions to another entity.").

We also suggest that, in advising the Hospital District with respect to this matter, you consider common-law and statutory conflict-of-interest rules, which are directed at preventing public officials from using their authority to benefit their own or other private interests. For example, in Attorney General Opinion H-1309, this office concluded that while the prohibitions against dual office-holding and incompatibility did not preclude a member of a state commission from serving on the board of a private nonprofit foundation affiliated with the public entity, common-law prohibitions would limit the ability of the two entities to enter into contracts:

> Public officers may not have a direct or indirect pecuniary interest in a contract entered into by the agency or political subdivision they serve. *Meyers v. Walker*, 276 S.W. 305 (Tex. Civ. App.–Eastland 1925, no writ) . . . .

. . . .

> Closely related to the policy against public contracts in which one of the contracting officials has a pecuniary interest is the policy against dual agency. An agent may not represent the opposing party in a transaction without the full knowledge and consent of his princip[al]. *Anderson v. Griffith*, 501 S.W.2d 695, 700 (Tex. Civ. App.–Fort Worth, writ ref'd n.r.e.); *Bute v. Stickney*, 160 S.W.2d 302 (Tex. Civ. App.–San Antonio 1942, writ ref'd w.o.m.). Although this rule has developed in the context of private transactions, we believe it is relevant to the conduct of persons acting as agents of the state. Like the policy against conflict of interest in public contracts, it guards against competing interests of a public official which would 'prevent him from exercising absolute loyalty and undivided allegiance to the best interest' of the governmental entity he serves.

Tex. Att'y Gen. Op. No. H-1309 (1978) at 2.

Significantly, these common-law rules have been largely displaced by statutes, the most relevant of which for our purposes is chapter 171 of the Local Government Code. Chapter 171, which has been construed to apply to members of a hospital district board, *see* Tex. Att'y Gen. Op. No. JC-210 (2000), establishes the duties of local public officials when they are faced with voting on a matter that will affect a business entity in which they have an interest. *See* TEX. LOC. GOV'T CODE ANN. §§ 171.002, .003 (Vernon 1999). Specifically, a local public official who has a "substantial interest" in a business entity must disclose that interest and abstain from participating in a vote or decision on a matter that will have a special economic effect on the business entity. *See id.* § 171.004. Chapter 171 expressly provides that it preempts the common-law of conflicts-of-interest as applied to the local officials who fall within the chapter's scope. *See id.* § 171.007(a). In addition, section 171.009 affirmatively permits a local public official "to serve as a member of the board of directors of private, nonprofit corporations when such officials receive no compensation or other remuneration from the nonprofit corporation or other nonprofit entity." *Id.* § 171.009.

The MetroWest bylaws provide that directors of the HMO serve without compensation, but they do not "preclude any Director from serving the Corporation in any other capacity and receiving compensation therefor." Request Letter, *supra* note 1, at 3. Thus, conceivably an HMO board member who is also a member of the Hospital District board of managers could receive a salary from the HMO as an HMO employee.[3] A member of the board of managers who serves on the HMO board and has a substantial interest in the HMO, *see* TEX. LOC. GOV'T CODE ANN. § 171.002 (Vernon 1999) (defining "substantial interest"), must disclose that interest and refrain from participating in any vote or decision of the board of managers that has a special economic effect on the HMO, *see id.* § 171.004. As chapter 171 preempts the common-law of conflicts-of-interest,

---

[3]This provision raises the issue whether a member of the hospital district board of managers may be employed by the HMO. As you do not raise this issue, we do not address it.

however, members of the Hospital District board of managers who serve on the HMO board and who do not have a substantial interest in the HMO are permitted to participate in board of managers votes and decisions that affect the HMO. *See* Tex. Att'y Gen. Op. Nos. JM-1065 (1989) (by virtue of chapter 171, member of city council who serves on board of foundation but does not have a substantial interest in the foundation may participate in votes and decisions of the council concerning agreements between the city and the foundation); JM-424 (1986) at 8 (statutory predecessor to chapter 171 supplants common-law policy against dual agency).

Finally, we caution that chapter 171 governs the duty of members of the Hospital District board of managers to the Hospital District; it does not address the duty of persons who serve on both the board of managers and the HMO board to MetroWest. *See* Tex. Att'y Gen. Op. No. DM-256 (1993). In participating in HMO matters involving the interests of both entities, MetroWest board members who are also members of the board of managers must also faithfully carry out their duty to MetroWest, consulting and complying with the standards and requirements of the Texas Non-Profit Corporation Act. *See, e.g.*, TEX. REV. CIV. STATS. ANN. arts. 1396-2.28 (duty of director of nonprofit corporation to act in best interest of the corporation); 1396-2.30 (procedures applicable when director has an interest in a contract or transaction between corporation and another entity) (Vernon 1997).

Next we consider whether the Open Meetings Act would apply to the MetroWest board of directors if the hospital district appoints three of its eleven members to the five-member MetroWest board and MetroWest amends its articles of incorporation and bylaws to omit the requirement that the MetroWest board conduct its meetings under the Open Meetings Act. We conclude that it may.

The Open Meetings Act (the "Act") applies to governmental bodies. *See* TEX. GOV'T CODE ANN. § 551.002 (Vernon 1994) ("Every . . . meeting of a *governmental body* shall be open to the public, except as provided by this chapter.") (emphasis added). It defines the term "governmental body" to include the following pertinent entities at the local level:

> (B)  a county commissioners court in the state;
>
> (C)  a municipal governing body in the state;
>
> (D)  a deliberative body that has rulemaking or quasi-judicial power and that is classified as a department, agency, or political subdivision of a county or municipality;
>
> (E)  a school district board of trustees;
>
> (F)  a county board of school trustees;
>
> (G)  a county board of education;
>
> (H)  the governing board of a special district created by law.

*Id.* § 551.001(3) (Vernon Supp. 2001). The definition of "governmental body" also includes certain nonprofit water supply corporations, *see id.* § 551.001(3)(I). Finally, as the result of amendments to the Act in the last legislative session that will become effective September 1, 2001, the term "governmental body" will also include a local workforce development board,[4] and "a nonprofit corporation that is eligible to receive funds under the federal community services block grant program and that is authorized by this state to serve a geographic area of this state."[5]

Only entities that fall within the definition of "governmental body" are subject to the Act. The hospital district board of managers is a governmental body within the meaning of subsection (H). *See* Tex. Att'y Gen. Op. No. H-238 (1974) (concluding that the governing body of the Harris County Hospital District was a special district subject to the Open Meetings Act); Tex. Att'y Gen. LO-97-017 (1997). This office has held on several occasions that nonprofit corporations established pursuant to the Texas Non-Profit Corporation Act, that assist local entities pursuant to contract, and that are not delegated governmental authority, are not subject to the Open Meetings Act. *See, e.g.,* Tex. Att'y Gen. Op. No. JC-0327 (2001) (Bryan-College Station Economic Development Corporation not subject to the Open Meetings Act); Tex. Att'y Gen. LO-94-090 (1994) (concluding that Moore County Development, Inc., a nonprofit corporation organized under Texas Non-Profit Corporation Act, was not a special district within meaning of Open Meetings Act). Thus, assuming that MetroWest has not been delegated governmental authority, we do not believe that its board is a governmental body within the literal language of the Open Meetings Act.

As noted above, as of September 1, 2001, the definition of "governmental body" will extend to a local workforce development board,[6] and "a nonprofit corporation that is eligible to receive funds under the federal community services block grant program and that is authorized by this state to serve a geographic area of this state."[7] The former amendment extends the Act to local workforce development boards created under the Workforce and Economic Competitiveness Act, chapter 2308 of the Government Code. *See* Tex. H.B. 936, 77th Leg., R.S., ch. 1004, 2001 Tex. Sess. Law Serv. (eff. 9/01/01); TEX. GOV'T CODE ANN. § 2308.253 (Vernon 2000) (providing for the creation of local workforce development board). The HMO does not appear to be a local workforce development board. *See id.* Furthermore, the latter amendment extends the Act to nonprofit corporations that receive federal community services block grants authorized by the federal Community Services Block Grant Act, 42 U.S.C. ch. 106 (1994 & Supp. IV), and administered by the community affairs division of the Texas Department of Housing and Community Affairs, *see, e.g.,* TEX. GOV'T CODE ANN. ch. 2306, subch. E (Vernon 2000) (community affairs division of the Texas Department of

---

[4]Tex. H.B. 936, Act of May 24, 77th Leg., R.S., ch. 1004, § 1, sec. 551.001(3)(I), 2001 Tex. Sess. Law Serv. (eff. 9/01/01).

[5]Tex. H.B. 371, Act of May 17, 77th Leg., R.S., ch. 633, § 1, sec. 551.001(3)(J), 2001 Tex. Sess. Law Serv. (eff. 9/01/01).

[6]Tex. H.B. 936, Act of May 24, 77th Leg., R.S., ch. 1004, § 1, sec. 551.001(3)(I), 2001 Tex. Sess. Law Serv. (eff. 9/01/01).

[7]Tex. H.B. 371, Act of May 17, 77th Leg., R.S., ch. 633, § 1, sec. 551.001(3)(J), 2001 Tex. Sess. Law Serv. (eff. 9/01/01).

Housing and Community Affairs); 10 TEX. ADMIN. CODE § 5.1 (2001) (Tex. Dep't of Housing and Community Affairs, Community Services Block Grant) (assurances for community services block grant program).[8] The HMO does not appear to receive federal community services block grants.[9]

This not the end of our analysis, however, because although the HMO board may not be a "governmental body" under section 551.001, the Act will apply to meetings of the MetroWest board of directors if the three members of the Hospital District board of managers who serve on the MetroWest board function as a subcommittee of the board of managers. The Act defines a "meeting" in part as "a deliberation between a quorum of a governmental body, or between a quorum of a governmental body and another person, during which public business or public policy over which the governmental body has supervision or control is discussed or considered." TEX. GOV'T CODE ANN. § 551.001(4)(A) (Vernon Supp. 2000); see also id. § 551.001(2) (defining "deliberation" to mean "a verbal exchange during a meeting between a quorum of a governmental body, or between a quorum of a governmental body and another person, concerning an issue within the jurisdiction of the governmental body or any public business"). Generally, meetings of less than a quorum of a governmental body are not subject to the Act. While three members do not constitute a quorum of the eleven-member board of managers, see id. § 551.001(6) (defining "quorum" as "a majority of a governmental body, unless defined differently by applicable law or rule or the charter of the governmental body"), the Act may apply to meetings of less than a quorum of a governmental body in certain circumstances. This office has repeatedly construed the Act to apply to subcommittees of less than a quorum of a governmental body if, for example, the subcommittee supervises or controls business of the governmental body or makes recommendations that are merely rubber-stamped by the governmental body. See, e.g., Tex. Att'y Gen. Op. Nos. JC-0060 (1999), JM-1072 (1989), H-772 (1976), H-238 (1974), H-3 (1973).

Thus, the group of three board of managers members may constitute a governmental body in and of itself if the board of managers has delegated to the group any authority over Hospital District business or rubber-stamps the group's recommendations regarding Hospital District business. See Tex. Att'y Gen. Op. Nos. JC-203 (2000), H-238 (1974) (standing committees composed of members of the hospital district board of managers that have been delegated authority to deliberate and make recommendations in a particular area of hospital district business must comply with the notice and accessibility provisions of the Open Meetings Act). In that case, meetings of the MetroWest board at which the board of managers members consider Hospital District business within that group's control will be subject to the Act.

---

[8]See Tex. H.B. 371, 77th Leg., R.S., ch. 633, 2001 Tex. Sess. Law Serv. (amending Government Code section 551.001); Hearings on Tex. H.B. 371 Before the House Comm. on State Affairs, 77th Leg., R.S. (Mar. 19, 2001) (testimony of author of House Bill 371, Rep. Bob Glaze) (audio tape available from House Video/Audio Services); Debate on Tex. H.B. 371 on the Floor of the House, 77th Leg., R.S. (Apr. 25, 2001) (audio tape available from House Video/Audio Services) ("This bill only applies to those organizations that are certified by the state to serve a certain area and that also meet the requirements to receive funding from the community service block grant. This is administered by the Texas Department of Community and Housing Development.") (statement of author of House Bill 371, Rep. Bob Glaze).

[9]Tex. Dep't of Housing and Community Affairs list of CSBG recipients, available at http://www.tdhca.state.tx.us/pdf/ca/con_list.pdf.

Finally, we urge the Hospital District and MetroWest to consider the policy implications of amending the HMO's articles of incorporation and bylaws to remove the Open Meetings Act safeguard. There appears to be a distinct possibility that Hospital District business could be conducted by the HMO board behind closed doors. Although this will be the case regardless of the size of the HMO board, the opportunity for meetings of the HMO board to devolve into meetings of a subcommittee of the Hospital District board of managers will be heightened by the fact that members of the board of managers constitute a majority of the HMO's five-member board. Furthermore, there is at least the appearance that the HMO is a mere alter ego of the Hospital District. It seems the more prudent course would be for the HMO board to comply with the Open Meetings Act, even if the letter of the law does not require it to do so.

In sum, the Hospital District board of managers may appoint its own members to the board of the HMO but members of the Hospital District board of managers who also serve on the HMO board must comply with chapter 171 of the Local Government Code whenever participating in a vote or decision involving the HMO. Furthermore, in participating in HMO matters involving the interests of both entities, HMO board members who are also members of the board of managers must faithfully carry out their duty to the HMO, consulting and complying with the standards and requirements of the Texas Non-Profit Corporation Act. The group of Hospital District board of managers members who serve on the HMO board may constitute a governmental body in and of itself if the board of managers has delegated to the group any authority over Hospital District business or rubber-stamps the group's recommendations regarding Hospital District business. In that case, meetings of the HMO board at which the board of managers members consider Hospital District business within that group's control will be subject to the Open Meetings Act.

## S U M M A R Y

The Tarrant County Hospital District board of managers may appoint its own members to the board of the health maintenance organization ("HMO") established by the Hospital District, but members of the board of managers who also serve on the HMO board must comply with chapter 171 of the Local Government Code whenever participating in a Hospital District vote or decision involving the HMO. Furthermore, in participating in HMO matters involving the interests of both entities, HMO board members who are also members of the board of managers must faithfully carry out their duty to the HMO, consulting and complying with the standards and requirements of the Texas Non-Profit Corporation Act.

Although the HMO board is not a governmental body subject to the Open Meetings Act, the group of Hospital District board of managers members who serve on the HMO board may constitute a governmental body in and of itself if the board of managers has delegated to the group any authority over Hospital District business or rubber-stamps the group's recommendations regarding Hospital District business. In that case, meetings of the HMO board at which the board of managers members consider Hospital District business within that group's control will be subject to the Open Meetings Act.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General, Opinion Committee